**CHARVAT, Appellant,**

v.

**CRAWFORD et al., Appellees.**

[Cite as *Charvat v. Crawford,* 155 Ohio App.3d 161, 2003-Ohio-5891.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 02AP–1086.

Decided Nov. 4, 2003.

Thomas C. Callahan, for appellant.

Kopech & Associates and David A. Kopech, for appellees.

LAZARUS, Judge.

{¶ 1} Plaintiff-appellant, Philip J. Charvat, appeals from the July 29, 2002 decision and September 18, 2002 judgment granting the motion for summary judgment of defendants-appellees, Alex D. Crawford and Jennifer E. Crawford, d.b.a. AJ Marketing Group, on appellant's Telephone Consumer Protection Act

claim ("TCPA"). For the reasons that follow, we reverse the grant of summary judgment and remand for further proceedings.

{¶ 2} On April 11, 2001, appellant filed a complaint in the Franklin County Court of Common Pleas alleging violations by appellees of the TCPA, Section 227, Title 47, U.S.Code, and violation of federal regulations related to telemarketing and telephone solicitation, Section 64.1200, Title 47, C.F.R., violation of the Ohio Consumer Sales Protection Act, R.C. 1345.01 et seq., violation of state statutes governing telephone solicitors, R.C. 4719.01 et seq., and violation of state regulations relating to deceptive acts or practices in connection with consumer transactions. Ohio Adm.Code 109:4–3–11(A)(1).

{¶ 3} The TCPA and related regulations prohibit the sending of unsolicited advertisements by a prerecorded voice without obtaining the prior express invitation or permission of the recipient, Section 227(b)(1)(B), Title 47, U.S.Code; Section 64.1200(a)(2)(iii), Title 47, C.F.R. Appellant brought this action as a result of receiving two telephone calls placed to his residence.

{¶ 4} On February 16, 2001, appellees' company, using a prerecorded message player, made two telephone calls to appellant's residence almost simultaneously to his two telephone lines. Appellant recorded both calls on recording equipment he had previously attached to each phone line. He was also able to listen to the calls while they were being recorded.

{¶ 5} The following message is taken from a transcript attached to appellant's memorandum contra to appellees' motion for summary judgment:

"Resident: 'Hello.........'

"Recorded female voice: 'Hello! This is the AJ Marketing Group. We're doing a search in the Columbus area for people who'd like to earn full or part time income working from home. If you would like to *receive free information*, please press one, otherwise please press two to hang up.

" 'Touchtone sound

" 'In the last twelve months *we have shown* literally thousands of people across the United States **how to work** from home, from New York to San Diego from Miami to Seattle. Now it's your turn. If you have one hour a day, you can earn up to five hundred to twenty five hundred dollars a month without interfering with what you're presently doing. If you have more time, you can earn much more. If you are teachable, honest, and would like to start working from home, *we are looking for 25 people in the Columbus area to train* in the next 90 days. If you would like to receive our free fourteen page information booklet to see if this is right for you, after the tone, please leave your name and address and spell out everything, or call our toll free number, 888 382 7933 or you can visit our web site *www.wealthstartshere.com*, and you can also down-

load that free report at our web site. Your free booklet will be mailed to you within 48 hours. Please leave your name and address now, and after you are finished, please press the pound key.'

"Beep tone

"Resident: 'Now I'm going to switch over to the other call which came in on the other line at the same time.'

"Prerecorded female voice: '. . . after the tone, please leave your name and address and spell out everything, or call our toll free number, 888 382 7933 or you can visit our web site *www.wealthstartshere.com*, and you can also download the free report at our web site. Your free booklet will be mailed to you within 48 hours. Please leave your name and address now, and after you are finished, please press the pound key.'

"Resident: 'Hi, would you please send your booklet to Dave Curtis. That's Dave Curtis, 636 Colony Drive, 636 Colony Drive, Westerville, Ohio 43081. Thank you.'

"Touch tone sound

"Recorded female voice: 'Make sure to look for a yellow booklet in the mail. There will be a training in your area within the next 30 days. We look forward to helping you change what the next 90 days holds for you. Thank you very much, and have a great day.'

"Disconnect sounds

"Resident: 'Let'[s] see if we can trace that.'

"Touchtone sounds

"Ameritech recording: 'The last number that called you [sic] line was 614 473 0215. This call was received on February 16 at 5:12 pm. To call this number, dial one, otherwise hang up now.'

"Resident: 'Ok, now I'm going to plug this thing back into the 1351 line, I got two calls at the same time, and see if I can trace that one.'

"Touchtone sounds

"Ameritech recording: 'The last number that called you [sic] line was 614 473 0214. This call was received on February 16 at 5:12 pm. To call this number, dial one, otherwise hang up now.'

"Touchtone sounds" (Emphasis sic.) (Exhibit F to plaintiff Philip Charvat's memorandum contra defendants' Alex D. Crawford et al.'s motion for summary judgment.)

{¶ 6} Appellees moved for summary judgment, contending that their prerecorded telephone calls did not violate the TCPA because they did not attempt to sell goods, property, or services. Rather, appellees contended that the calls were intended "to provide the receiver with an opportunity to obtain information if the

receiver so chooses." (Plaintiff's First Request of Defendants for Admissions, Exhibit D to Plaintiff's Memorandum Contra to Defendants' Motion for Summary Judgment.) Appellant disagreed, arguing that the calls were for a commercial purpose and contained unsolicited advertising, as that term is used in the TCPA, Section 227(b)(2)(B), Title 47, U.S.Code, and Section 64.1200(c), Title 47, C.F.R. The trial court, agreeing with an earlier decision of the common pleas court on similar facts, concluded that the calls did not constitute unsolicited advertisements. The trial court granted summary judgment for appellees on the federal claims but denied summary judgment on the state-law claims, as appellees did not address those claims in their motion for summary judgment.

{¶ 7} By mutual agreement of the parties, appellant dismissed his state claims in order to allow his appeal to go forward. On appeal, appellant has assigned the following as error:

"The trial court erred in granting summary judgment in favor of appellees and against appellant when there remained genuine issues of material fact and movants were not otherwise entitled to judgment as a matter of law.

"The trial court erred by not using the mandatory definition of 'unsolicited advertisement' as defined by the TCPA, but used instead an improper definition that resulted in granting summary judgment in favor of appellees and against appellant.

"The trial court erred in granting summary judgment in favor of appellees and against appellant when it improperly concluded that the first call in violation of 47 U.S.C. § 227(b)(1)(B) is not actionable, regardless of whether or not a prior do not call demand was issued by the called party to the caller."

{¶ 8} For ease of discussion, appellant's assignments of error will be discussed as a whole. Appellant first argues that there exist genuine issues of material fact, yet he acknowledges that the sole dispute is whether the telephone calls contained an unsolicited advertisement, as that term is used in the TCPA.

{¶ 9} Appellate review of summary judgment motions is de novo. *Helton v. Scioto Cty. Bd. of Commrs.* (1997), 123 Ohio App.3d 158, 162, 703 N.E.2d 841. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." *Mergenthal v. Star Banc Corp.* (1997), 122 Ohio App.3d 100, 103, 701 N.E.2d 383. Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. *State ex rel. Grady v. State Emp. Relations Bd.* (1997), 78 Ohio St.3d 181, 183, 677 N.E.2d 343.

{¶ 10} We note that in this case, the facts are not in dispute. Rather, it is the conclusions that one draws from those facts that are in dispute. In other words, we are being asked to apply a statute using standard rules of statutory construction and giving due deference to the governmental agency that has created regulations based upon the statute. See *Charvat v. Dispatch Consumer Serv., Inc.,* 95 Ohio St.3d 505, 2002-Ohio-2838, 769 N.E.2d 829, at ¶ 17 and 38 (court must follow agency commentary unless it is at odds with the regulation it explains).

{¶ 11} Appellant next argues that the trial court applied the wrong definition of "unsolicited advertisement" in deciding to grant summary judgment for appellees. We disagree. The trial court did not explicitly set out the definition of "unsolicited advertisement," but it did adopt the reasoning of an earlier case that did.

{¶ 12} Turning to the relevant statutes and regulations, we note that the TCPA provides: "It shall be unlawful for any person within the United States * * * to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order by the Commission under paragraph (2)(B)." Section 227(b)(1)(B), Title 47, U.S.Code. The statute goes on to provide that the commission has the authority to exempt calls that "do not include the transmission of any unsolicited advertisement." Section 227(b)(2)(B)(ii)(II), Title 47, U.S.Code.

{¶ 13} The Federal Communications Commission ("FCC") regulations provide:

"(a) No person or entity may:

"* * *

"(2) Initiate any telephone call to any residential line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call,

"* * *

"(iii) [i]s made for a commercial purpose but does not include or introduce an unsolicited advertisement or constitute a telephone solicitation[.]" Section 64.1200(a)(2)(iii), Title 47, C.F.R.

{¶ 14} "Unsolicited advertisement" is defined in the regulations as follows:

"The term unsolicited advertisement means any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission." Section 64.1200(f)(10), Title 47, C.F.R.

{¶ 15} "Telephone solicitation" is defined in the regulations as follows:

"(f)(9) The term telephone solicitation means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person, but such term does not include a call or message:

"(i) To any person with that person's prior express invitation or permission;

"(ii) To any person with whom the caller has an established business relationship; or

"(iii) By or on behalf of a tax-exempt nonprofit organization." Section 64.1200(f)(9)(i)(ii)(iii), Title 47, C.F.R.

{¶ 16} In *Charvat v. Dispatch Consumer Serv.*, supra, 95 Ohio St.3d 505, 2002-Ohio-2838, 769 N.E.2d 829, the Ohio Supreme Court determined that an agency's interpretation and commentary regarding its own rules is due even greater deference than the interpretation of a statute made by a rulemaking authority. Id. at ¶ 23, 37, and 38. To that end, we turn to the Federal Communications Commission Report and Order In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order (2003), 18 F.C.C.R. 14014. In that order, the FCC discusses its current rules and revises those rules. Obviously, the revisions are not relevant to this appeal, as they were not effective at the time appellees made their calls. But the portion of the report that discusses the present status of the rules is highly relevant to our application of the current statute and regulations to the disputed facts of this case.

{¶ 17} The section of the report that is relevant to our discussion is entitled "Offers for Free Goods or Services; Information–Only Messages." In pertinent part, that section provides:

"Congress found that 'residential telephone subscribers consider automated or prerecorded telephone calls ... to be a nuisance and an invasion of privacy.' It also found that '[b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.' Congress determined that such prerecorded messages cause greater harm to consumers' privacy than telephone solicitations by live telemarketers. The record reveals that consumers feel powerless to stop prerecorded messages largely because they are often delivered to answering machines and because they do not always provide a means to request placement on a do-not-call list.

"* * * The TCPA's definition [of unsolicited advertisement] does not require a sale to be made during the call in order for the message to be considered an advertisement. Offers for free goods or services that are part of an overall

marketing campaign to sell property, goods, or services constitute 'advertising the commercial availability or quality of any property, goods, or services.' Therefore, the Commission finds that prerecorded messages containing free offers and information about goods and services that are commercially available are prohibited to residential telephone subscribers, if not otherwise exempted."

"* * *

"Fn. 477. Therefore, a prerecorded message that contains language describing a new product, a vacation destination, or a company that will be in 'your area' to perform home repairs, and asks the consumer to call a toll-free number to 'learn more,' is an 'unsolicited advertisement' under the TCPA if sent without the called party's express invitation or permission. * * *" Report and Order at paragraphs 139–140 and fn. 477.

{¶ 18} We find that the FCC regulations and commentary concerning unsolicited advertisements are consistent with the statute. As the Ohio Supreme Court has stated, "The purpose of the Act is to reduce the nuisance aspect of telemarketing." *Charvat v. Dispatch Consumer Serv.*, 95 Ohio St.3d 505, 2002-Ohio-2838, 769 N.E.2d 829, at ¶ 44. Thus, we defer to and agree with the position of the FCC on this matter. We agree that the application of the prerecorded message rule should turn, not on the caller's characterization of the call, but on the purpose of the message. Thus, a prerecorded message that contains free offers and information about services and that asks the consumer to call a toll-free number to learn more is an unsolicited advertisement under the TCPA if sent without the called party's express invitation or permission. A review of the evidence presented in this case demonstrates that appellees' telephone calls did all of the above. Therefore, summary judgment for appellees on appellant's TCPA claim was unwarranted.

{¶ 19} Appellant's final argument concerns an alleged determination by the trial court that it improperly concluded that the first call in violation of Section 227(b)(1)(B), Title 47, U.S.Code is not actionable, regardless of whether a prior do-not-call demand was issued by the called party to the caller. We find that the trial court made no such conclusion and, accordingly, the argument is not well taken.

{¶ 20} Based on the foregoing, appellant's first assignment of error is sustained in part and overruled in part. The assignment of error is overruled with respect to the issue of whether a genuine issue of material fact exists, but sustained with respect to the contention that appellees were not entitled to judgment as a matter of law. Appellant's second and third assignments of error are overruled, and the

judgment of the Franklin County Court of Common Pleas is reversed and remanded for further proceedings in accordance with this opinion.

Judgment reversed
and cause remanded.

WATSON, J., concurs.

SADLER, J., concurs in part and dissents in part.

SADLER, Judge, concurring in part and dissenting in part.

{¶ 21} I am unable to completely agree with the majority's disposition of the first assignment of error. However, I concur in the majority's disposition of the second and third assignments of error and in the judgment.

{¶ 22} The majority overrules the part of appellant's first assignment of error wherein appellant contends that genuine issues of material fact exist on the current state of the record. I believe that appellant is correct and would thus sustain this portion of his first assignment of error. It appears that the majority regards the issues presented by appellant's first assignment of error as purely legal in nature. In ¶ 8 of the majority opinion it states, "[T]he sole dispute is whether the telephone calls contained an unsolicited advertisement, as that term is used in the TCPA." I agree. However, I view this issue as one of mixed questions of fact and law.

{¶ 23} I agree that we are obliged to apply the language of the TCPA itself, the FCC regulations concerning the definitions of "unsolicited advertisement" and "telephone solicitation," and the FCC's July 3, 2003 Report and Order. I also believe that the text of the prerecorded messages transmitted to appellant through his telephone is central to the inquiry whether these messages are violative of the TCPA and the FCC regulations promulgated thereunder. However, I believe that the FCC's Report and Order mandates that the inquiry include examination of facts other than merely the text of the messages.

{¶ 24} The Report and Order states, in part, that "[o]ffers for free goods and services *that are part of an overall marketing campaign to sell property, goods or services* constitute 'advertising the commercial availability or quality of any property, goods or services' [as that phrase is used in the FCC's definition of 'unsolicited advertisement']." 18 F.C.C.R. 14014, at ¶ 140. (Emphasis added.) Thus, in reviewing the judgment below, we must assess whether there are genuine issues of fact with respect to whether appellees' prerecorded messages, which clearly contain an offer of free information about a business opportunity, are part of an overall marketing campaign to sell property, goods, or services.

This cannot be assessed without resort to evidence other than the text of the prerecorded messages.

{¶ 25} Accordingly, I cannot agree with the majority's blanket statement in ¶ 18 that "a prerecorded message that contains free offers and information about services and that asks the consumer to call a toll-free number to learn more is an unsolicited advertisement under the TCPA if sent without the called party's express invitation or permission." According to the FCC Report and Order, in order to be considered an "unsolicited advertisement," the message must be part of an overall marketing campaign to sell something; in many instances, including the case at bar, the text of the call alone will not reveal whether the call is part of an overall marketing campaign, nor will it reveal the character of the overall marketing campaign of which the call may, in fact, be a part.

{¶ 26} Appellant recognized this and dutifully met his reciprocal burden, pursuant to Civ.R. 56(E), to set forth specific facts showing that there are genuine issues for trial. First, appellant attached to his memorandum contra a copy of appellees' responses to appellant's first request for admissions. In their response to request number 27, appellees admit that "[p]art of the Defendants' business income flows from the sales or profits of persons they have trained to engage in business activities similar to those of the Defendants."

{¶ 27} Appellant also attached to his memorandum contra a copy of appellees' answers to appellant's first set of interrogatories. Interrogatory No. 12 states, "[B]riefly state the nature of Defendants' business." The response is "Health and Nutrition Distribution." Interrogatory No. 13 states, "Identify fully all goods and services that generate income for the Defendants." The response is "Health and Nutrition Products." Interrogatory No. 14 states, "Identify fully all methods by which Defendants generate business income, such as, but not limited to, sales, leasing, training, recruiting of new members, and consulting." The response is "Sales." This evidence is sufficient to create a genuine issue of fact with respect to whether appellees' prerecorded messages transmitted to appellant were part of an overall marketing campaign to sell property, goods, or services (i.e., health and nutrition products). Accordingly, summary judgment for appellees was inappropriate.

{¶ 28} On the current state of the record, I cannot agree with the majority that there are no genuine issues of material fact, and thus would sustain the first assignment of error in its entirety. Given that the majority holds that there are no genuine issues of material fact, which would seem to preclude a trial, it is unclear to me what, practically, the trial court is being instructed to do, since appellant did not move the trial court for judgment as a matter of law.

{¶ 29} I also feel compelled to address another central argument in appellees' motion for summary judgment, that is, that appellees obtained "prior express

invitation or permission," as that phrase is used in the FCC's definition of "unsolicited advertisement," by the use of the first part of the call, wherein the called party is given the choice of pressing 1 "to receive free information" or pressing 2 "to hang up." The trial court agreed, finding that appellant essentially gave appellees permission to transmit their advertisement by pressing 1.

{¶ 30} The FCC Report and Order relied upon by the majority is dispositive of this issue. In ¶ 142 thereof, the FCC comments that "[p]urporting to obtain consent during the call, such as requesting that a consumer 'press 1' to receive further information, does not constitute the prior consent necessary to deliver the message in the first place, as the request to 'press 1' is part of the telemarketing call." In accordance with *Charvat v. Dispatch Consumer Serv., Inc.*, 95 Ohio St.3d 505, 2002-Ohio-2838, 769 N.E.2d 829, we are compelled to follow this commentary so long as it is not at odds with Section 64.1200(f)(10), Title 47, C.F.R. Although the trial court did not have the benefit of the FCC's guidance on this issue, the commentary does defeat appellees' argument that they obtained the requisite consent for the advertisement transmitted when appellant pressed 1 on his telephone keypad.

{¶ 31} As discussed above, however, believing that genuine issues of material fact are present as to the existence and character of the overall marketing campaign of which appellees' calls to appellant may be a part, I would sustain the first assignment of error in its entirety.