OPINION
{¶ 1} Appellant, Merrie M. Frost, appeals the judgment of the Lake County Court of Common Pleas finding that she engaged in frivolous conduct and violated Civ. R. 11. For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} In August, 2005, appellant, an attorney, had a conversation with attorney Kenneth Cahill ("Cahill") concerning a case pending in the Lake County Court of Common Pleas, entitled Tina Stevenson v. Laketran, Case No. 04-CV-001576 ("the *Page 2 
Laketran case"). Appellant represents Plaintiff Tina Stevenson ("Stevenson") in a sexual harassment action against Laketran.
 {¶ 3} Cahill testified he told appellant that someone had come to his office and they had discussed the Laketran case. He indicated that the defendant would likely attempt to discredit Stevenson by referring to her mental history. The person with whom Cahill had this discussion was a former client of his; however, he did not disclose her identity to appellant.
 {¶ 4} Appellant testified that Cahill told her he had overheard two female attorneys at the Courthouse who referred to Stevenson as "crazy," "out of her head," and a "liar." She said that because they were discussing the Laketran case at the time, she assumed the two female attorneys represented Laketran, although she admitted Cahill never told her they did. Since the attorneys who represent Laketran are Appellees Aretta Bernard and Karen Adinolfi, appellant further assumed they had made the statements about Stevenson.
 {¶ 5} Appellant then sent an e-mail on August 18, 2005, to appellees in which she stated:
 {¶ 6} "* * * [A] Lake County Attorney approached me last week and told me that he overheard one or both of you talking about [the Laketran] case. * * * I did not have time to talk to him in detail, but he said it was two women attorneys on the Laketran case, and they were saying how the plaintiff was `crazy,' `out of her mind' and some other comments regarding the case.
 {¶ 7} "Right now I do not have time to pursue this, but be advised that I am going to call him in a few weeks and find out exactly what was said, and where it was *Page 3 
said. He will be able to identify the person(s) making the comments. If it si (sic) true, I believe this may be a violation of the gag order, and is slander.
 {¶ 8} "You are on notice that I am going to pursue this and if you are saying such things, I suggest you learn to keep your mouth shut. * * *"
 {¶ 9} Cahill testified that he did not overhear either appellee make the alleged comments nor did he tell appellant they had made the comments. He said he did not tell her that two female attorneys or any attorneys on the Laketran case made any comments about Stevenson.
 {¶ 10} On the same date, appellees sent an e-mail to appellant denying her allegations and asking for further details. Appellant did not provide any further details to them.
 {¶ 11} Without having any additional discussion with Cahill and without obtaining any additional information, appellant filed the complaint in this action. Appellant claimed the appellees committed slander in that they said Stevenson was "crazy," "out of her head," and a "liar."
 {¶ 12} Appellant e-mailed the complaint to appellees on August 30, 2005. A partner in appellees' firm, Paul Jackson ("Jackson"), reviewed the complaint and called appellant to inquire who had heard the alleged statements. Appellant told him that Cahill told her the statements were made by appellees. Appellant told Jackson that she had been rushed in her conversation with Cahill, and that she had not had an opportunity to discuss the statements with him in detail. *Page 4 
 {¶ 13} Jackson then called Cahill and told him about the complaint. Cahill told Jackson that he did not know appellees. He further told him that appellees had never made the statements identified in the complaint.
 {¶ 14} Later that day Cahill called appellant. He told her that it was not the appellees who provided him information about the Laketran case. Cahill specifically explained to her that he never told her he overheard two female attorneys make these statements. He advised her that she was risking Rule 11 sanctions by filing the complaint.
 {¶ 15} On the next day, August 31, 2005, Jackson had another telephone conversation with appellant. He told her that based upon his conversation with Cahill appellant was incorrect. She told Jackson that these statements could have been made by any one of ten or twelve people who were in a room during depositions in the Laketran case, and that she would depose them to find out who made the statements.
 {¶ 16} Jackson told her she should dismiss the complaint and that if she did not, they would pursue their remedies under Civ.R. 11 and R.C.2323.51. He followed up on their conversation with a letter urging her to dismiss the lawsuit; however, appellant refused to do so.
 {¶ 17} On the same date appellant filed the complaint, she filed a motion for contempt against appellees in the Laketran case claiming they had violated a gag order prohibiting counsel from discussing the case with the media. In her motion appellant stated that two female attorneys in the Laketran case had said Stevenson was "crazy," "out of her head," and "lying." On October 6, 2005, the court in the Laketran case held *Page 5 
that "Plaintiff cannot support the allegations made in her Motion" and "should possess * * * proof prior to making such strong allegations."
 {¶ 18} Appellees through counsel filed a motion to dismiss this action; appellant filed a brief in opposition; and appellees filed a reply brief. In appellant's brief in opposition, filed on October 31, 2005, she represented to the court that Cahill heard appellees make the alleged statements.
 {¶ 19} Appellee Aretta Bernard ("Bernard") testified that appellant's complaint was a tactic to deter or stifle defense counsel in the Laketran case.
 {¶ 20} At the conclusion of the hearing, the trial court found that appellant had filed and maintained this action for months knowing she had no evidence against appellees and no factual basis for the complaint. She had ample opportunity to investigate and had the resources at her disposal to determine she had no case, but failed to avail herself of them. Instead, she relied on alleged verbal comments without confirming or investigating them.
 {¶ 21} The court relied on appellant's admissions that she was in a hurry, did not have time to investigate, that she would call Cahill to have him tell her what was said and by whom, but that she never had any additional discussion with Cahill to obtain such information.
 {¶ 22} The court found that in filing the complaint, appellant ignored what she knew to be a complete absence of evidence and relied on her suspicions instead of evidence.
 {¶ 23} The court found appellant unjustifiably delayed dismissing this action until November 14, 2005. Appellant knew the case lacked evidentiary basis after a hearing *Page 6 
was held on the motion for contempt in the Laketran case and because appellant knew the tenor of Cahill's testimony in August, 2005.
 {¶ 24} The court held appellant "rushed to file" the case, and had no "desire to dismiss it" even after her only witness told her there was no basis for her allegations. The trial court found that appellant had engaged in frivolous conduct and violated Civ.R. 11. The court found her actions were willful and awarded appellees attorney's fees in the amount of $3,000 and additional sanctions in the amount of $1,000, for a total of $4,000.
 {¶ 25} Appellant for her assignments of error asserts:
 {¶ 26} "[1.] The trial court erred in holding attorney Frost to a standard higher than the standard set forth in Rule 11 in determining whether or not attorney Frost had violated Rule 11 and whether or not her conduct was sanctionable.
 {¶ 27} "[2.] The court erred in granting sanctions against attorney Frost."
 {¶ 28} Since appellant's assignments of error are interrelated, they will be discussed together.
 {¶ 29} Appellant claims that the trial court erred in finding that she engaged in frivolous conduct and violated Civ.R. 11 by filing and maintaining the instant action. We disagree.
 {¶ 30} Civ.R. 11 provides in pertinent part:
 {¶ 31} "Every pleading [or] motion * * * of a party represented by an attorney shall be signed by at least one attorney of record * * *. The signature of an attorney constitutes a certificate by the attorney * * * that [he] * * * has read the document; that to the best of [his] * * * knowledge, information, and belief there is good grounds to support *Page 7 
it; and that it is not interposed for delay. * * * For a willful violation of this rule, an attorney * * * may be subjected to appropriate action, including an award to the opposing party of expenses and reasonable attorney fees * * *."
 {¶ 32} R.C. 2323.51 (A)(2) defines "frivolous conduct" as follows:
 {¶ 33} "(a) Conduct of * * * [a] party to a civil action * * * or of the * * * party's counsel of record that satisfies any of the following:
 {¶ 34} "(i) It obviously serves merely to harass or maliciously injure another party to a civil action * * * or is for another improper purpose * * *.
 {¶ 35} "* * *
 {¶ 36} "(iii) The conduct consists of allegations or other factual contentions that have no evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation * * *."
 {¶ 37} No single standard of review applies in R.C. 2323.51 and Civ.R. 11 cases. The inquiry necessarily must be one of mixed questions of fact and law. Crooks v. Consolidated Stores Corp. (Feb. 4, 1999), 10th Dist. No. 98 AP-83, 1999 Ohio App. LEXIS 350, *9.
 {¶ 38} The standard of review with respect to purely legal issues, such as whether there are good legal grounds to support a complaint, is de novo. When the inquiry is purely a question of law, an appellate court need not defer to the judgment of the trial court. Barrish v.Coyle, 11th Dist. No. 2003-L-024, 2004-Ohio-1847, at ¶ 13; see, also,Crooks, supra. However, some deference is appropriate in reviewing a trial court's factual determinations. An appellate court will not disturb a trial court's findings of fact where the record contains competent, credible evidence to support such findings. *Page 8 
This standard of review of factual determinations is similar to that employed in a review of the manifest weight of the evidence.Crooks, supra, at *9-*10. In C.E. Morris Co. v. Foley ConstructionCo. (1978), 54 Ohio St.2d 279, syllabus, the Supreme Court stated: "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence."
 {¶ 39} Where a trial court has found frivolous conduct or a violation of Civ.R. 11, the decision to impose sanctions lies within the discretion of the trial court. Barrish, supra, at ¶ 13; see, also,Crooks, supra, at *10. An abuse of discretion is more than an error of law or judgment; it implies an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable. Ruwe v. Bd. OfSpringfield Twp. Trustees (1987), 29 Ohio St.3d 59, 61.
 {¶ 40} In order to justify sanctions, the violation of Civ.R. 11 must be willful, and Civ.R. 11 employs a subjective, bad faith standard.Barrish, supra, at ¶ 13.
 {¶ 41} In contrast to Civ.R. 11, R.C. 2323.51 employs an objective standard in determining whether sanctions may be imposed for frivolous conduct. Kester v. Rogers (May 6, 1994), 11th Dist. Nos. 93-L-056 and 93-L-072, 1994 Ohio App. LEXIS 1949, *10. Whether frivolous conduct occurred is a factual determination, which is defined in objective rather than subjective terms. Master v. Chalko (May 11, 2000), 8th Dist. No. 75973, 2000 Ohio App. LEXIS 2014, *9.
 {¶ 42} In the instant case, the trial court awarded sanctions after making a finding that appellant pursued allegations with no evidentiary support. Therefore, abuse of discretion is the appropriate standard. Id. at *7. *Page 9 
 {¶ 43} It is well-settled that the failure to conduct a reasonable investigation may constitute frivolous conduct under R.C. 2323.51 and a violation of Civ. R. 11. Crooks, supra, at *11.
 {¶ 44} Crooks, supra, involved a claim of wrongful employment termination against the plaintiffs employer and two of its officers. During the plaintiffs deposition, when asked if she was aware of any facts indicating that the two officers were involved in the decision to terminate her, she said she did not know what their connection was. She said she had suspicions they were involved but no facts. The court held that because the allegations were based on suspicion rather than a factual basis, the trial court did not err in finding that the plaintiffs pursuit of her claims against the officers, despite the lack of any factual basis, constituted frivolous conduct. Id. at *16.
 {¶ 45} Other courts have also upheld the imposition of sanctions for frivolous conduct where the action was based on suspicion and not supported by any evidence. Id. at *15.
 {¶ 46} In Lewis v. Celina Fin. Corp. (1995), 101 Ohio App.3d 464,472-473, the court held that counsel's failure to adequately investigate the suit and attempt to verify the complaint's accuracy prior to filing constituted frivolous conduct.
 {¶ 47} In Masturzo v. Revere Rd. Synagogue (1994), 98 Ohio App.3d 347,353, the court affirmed a finding of frivolous conduct for appellant's synagogue's failure to dismiss the suit in a timely fashion, i.e., two months after it was informed that appellee leasing agent did not have an interest in the property that was the subject of the action.
 {¶ 48} In the instant case the record supports the trial court's finding that appellant engaged in frivolous conduct and violated Civ.R. 11 and R.C. 2323.51. She *Page 10 
filed the action based solely on her assumptions and suspicions and without good ground or any investigation, knowing she had no evidence against appellees. Further, she maintained the action for several months after her sole witness told her she had no evidence to support her allegations.
 {¶ 49} Appellant concedes that the trial court relied on Cahill's testimony rather than hers in entering its judgment. It is the province of the trier of fact to weigh the credibility of the witnesses. The court was therefore entitled to believe Cahill and to discredit appellant's testimony.
 {¶ 50} Cahill denied ever telling appellant he had overheard two female attorneys, and the record supports such finding by the trial court, despite appellant's testimony to the contrary.
 {¶ 51} Cahill testified and appellant concedes that he never attributed the alleged remarks to appellees. She further concedes that Cahill never told her that attorneys in the Laketran case had made the comments.
 {¶ 52} Assuming arguendo that Cahill attributed the statements to two female attorneys, appellant assumed: 1. that because she and Cahill were discussing the Laketran case at the time, the two attorneys were defense counsel in that matter and 2. that because appellees were defense counsel in the Laketran case, they must have made the comments. Appellant made these assumptions without ever asking Cahill if they were true.
 {¶ 53} Moreover, after Cahill reminded appellant on August 30, 2005, that he never said appellees or any other attorneys made these statements, she testified that he was "lying" and refused to dismiss the complaint. *Page 11 
 {¶ 54} She told Jackson she suspected the person who Cahill allegedly overheard was "one of about ten or 12 people" present during depositions, and that she would depose them in this action to learn the identity of the slandering parties. Appellant decided to file the complaint and to maintain the action based on nothing more than her assumptions and suspicions.
 {¶ 55} By maintaining this action with no factual basis, appellant forced appellees to retain counsel to defend the suit, to file a motion to dismiss, and to file a reply brief to her brief in opposition, in which she continued to maintain appellees' liability without any factual basis.
 {¶ 56} The record further supports the trial court's finding that appellant's conduct was willful, as required by Civ. R. 11. Cahill never told her appellees made the comments, nor did he ever tell her two female attorneys did. He thus never gave her reasonable grounds to believe appellees made the statements. Further, she recognized she had a duty to confirm the comments she thinks she heard during her "rushed" conversation with Cahill when she told appellees she would do so. In spite of this and without any limitations issue, as the trial court found, she rushed to file the complaint without ever talking to Cahill again. Finally, even if Cahill had made the comments attributed to him by appellant, once he called her on August 30, 2005, and told her he never made them, she was not justified in ignoring the complete lack of evidence and in refusing to dismiss the complaint.
 {¶ 57} The record demonstrates the allegations in the complaint and the factual contentions in appellant's opposition to the motion to dismiss had no evidentiary *Page 12 
support, and after being identified, would not be likely to have evidentiary support, despite appellant's opportunity for further investigation.
 {¶ 58} We do not agree with appellant's argument that the trial court imposed a higher standard on her than provided for in Civ. R. 11. We interpret the court's comments concerning appellant's burden of proof and her duty to have a provable case to merely refer to her duty to have a factual basis for the allegations in the complaint.
 {¶ 59} Contrary to appellant's argument, the court did not require appellant to prove her case with certainty before filing, but correctly required that she have good ground to support the pleading and to conduct a reasonable investigation before filing, both of which were lacking here.
 {¶ 60} We further do not agree with appellant's argument that the court improperly required her to know in advance the content of Cahill's testimony. The record supports the finding that she was well aware of what his testimony would be before she filed the complaint, and she certainly knew what it would be after her telephone conversation with Cahill on August 30, 2005.
 {¶ 61} Further, Cahill's "lack of response" to her voice message and appellees' post-suit refusal to give appellant an affidavit denying her vague claims provided no evidentiary basis for the complaint. As the trial court noted, the filing of the complaint did not relieve appellant of her obligation to have good grounds and conduct a reasonable investigation before filing her complaint.
 {¶ 62} We do not agree that good grounds existed until Cahill testified in the contempt hearing in November, 2005. Cahill made it clear to appellant on the day she *Page 13 
filed the complaint that her allegations were incorrect so appellant had no evidentiary basis to support her claims contained in this action.
 {¶ 63} Nor do we agree with appellant's argument that there was a conflict in the evidence at the time she filed the complaint. Appellant admitted Cahill never told her the two female attorneys were involved in the Laketran case, yet she told appellees in her August 18, 2005 e-mail that he did. Appellant therefore knew Cahill would not support her alleged assumptions before she filed the complaint. Her persistence in maintaining the suit after her telephone conversation with Cahill and her failure to conduct any investigation further demonstrate that there was no conflict in the evidence. She simply chose to ignore the evidence and pursued a claim which never had a factual basis.
 {¶ 64} The record contains competent, credible evidence to support the trial court's findings that appellant engaged in frivolous conduct and violated Civ.R. 11, and that her conduct was willful. The court did not abuse its discretion in awarding sanctions in this matter.
 {¶ 65} Appellant's assignments of error have no merit and are not well-taken. The judgment of the Lake County Court of Common Pleas is affirmed.
 DIANE V. GRENDELL, J., concurs, COLLEEN MARY OTOOLE, J., dissents. *Page 1