OPINION
{¶ 1} Phillip Berardinelli, Inc. ("PBI"), appellant, appeals the Lake County Court of Common Pleas' decision granting judgment in favor of appellee, Bryant Stratton College ("Bryant Stratton").
 {¶ 2} This case was originally filed by Raymond Omerza alleging that Bryant Stratton violated provisions of the Telephone Consumer Protection Act of 1991 *Page 2 
("TCPA"), Section 227(b), Title 47, U.S. Code, and the Ohio Sales Practices Act ("CSPA"), R.C. Chapter 1345, by transmitting to his business, PBI, an "unsolicited advertisement" via facsimile ("fax").[1] Omerza subsequently filed an amended complaint naming PBI as a plaintiff. On the first day of trial, Omerza voluntarily dismissed his claims. PBI's claim that Bryant Stratton violated the TCPA was initially tried to a jury, but prior to closing arguments both sides agreed to submit the case to the bench.
 {¶ 3} The evidence established that on May 22, 2003, Bryant 
Stratton, as a member of the Willoughby Area Chamber of Commerce ("chamber"), sent a two page fax to PBI and other members who were listed in the organization's directory. According to the chamber's executive director, one of the main purposes of the chamber is to strengthen and increase business for its members through networking opportunities. With this purpose in mind, the executive director further testified that the chamber publishes a directory where members may list their address, telephone number, fax number, and e-mail address so that they may "readily contact each other" for a needed product or service. Members may also purchase advertisements in the directory at a cost of between $1,000-3,000, and, in fact, Bryant Stratton did purchase such an advertisement.
 {¶ 4} Shawn Conley ("Conley"), employed by Bryant Stratton, testified that the fax he transmitted to PBI and to other chamber members on behalf of the college "was sent out as a business connect to the Chamber of Commerce members" and was being used as a way to help its graduates or students secure internships or employment positions. Mr. Conley further testified that the faxed document "does not correspond *Page 3 
with what we would use to advertise" the college and that all advertising is done out of a New York City advertising agency.
 {¶ 5} The first page of the two page fax transmission was in letter form and stated in pertinent part:
 {¶ 6} "Dear Fellow Chamber Members[,]
 {¶ 7} "We would like to formally introduce Bryant Stratton College to you. Please take a moment to review our fact sheet for some basic information. * * * We would also welcome you to share any information about your organization with us. Perhaps we can develop some type of mutually beneficial partnership, such as a referral exchange, internships, graduate placement, or continuing education for your employees."
 {¶ 8} The second page was a "fact sheet" listing information such as the student/faculty ratio, admission requirements, admissions process, career services, scholarship opportunities and program offerings.
 {¶ 9} After hearing the evidence, the trial court concluded that the transmitted fax was not an advertisement and therefore did not violate the TCPA. The court did not reach the issue of whether the document was unsolicited. Appellant filed a timely appeal raising the following assignment of error for our review:
 {¶ 10} "The trial court erred in granting judgment in favor of appellee."
 {¶ 11} Standard of Review
 {¶ 12} The issue in this appeal, whether the faxed document was an advertisement under the purview of the TCPA, presents a mixed question of law and fact; thus, "[w]e accept facts as found by the trial court on some competent, credible evidence, but freely review the application of the law to the facts." State v. Kist, 11th *Page 4 
Dist. No. 2006-G-2745, 2007-Ohio-4773, at ¶ 18, where we applied the mixed standard of review where speedy trial issues were at issue. Under a mixed standard of review, an appellate court will not disturb the trial court's findings of fact if the record contains competent, credible evidence to support such findings. Stevenson v. Bernard, 11th Dist. No. 2006-L-096, 2007-Ohio-3192, at ¶ 38. The underlying rationale in giving deference to the trial court's findings of fact is that the trial court "is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." State, ex rel.Pizza v. Strope (1990), 54 Ohio St.3d 41, 46, quoting Seasons Coal, supra. With respect to the legal issues we employ a de novo standard of review. Bernard at ¶ 38.
 {¶ 13} The Enactment of the TCPA and its Purpose
 {¶ 14} On December 20, 1991 Congress enacted the TCPA in response to the "abuses by the telemarketing industry," including the pervasive problems associated with the receipt of unwanted telemarketing calls and the receipt of unsolicited faxes. Sorkin, Unsolicited Commercial E-Mail and the Telephone Consumer Protection Act of 1991 (1997), 45 Buffalo L.Rev. 1001, at 1017. The Act, which stems from the culmination of years of legislative proposals and hearings[2] arose from an array of complaints surrounding the "growing number of telephone marketing calls and certain telemarketing practices thought to be an invasion of consumer privacy and even a risk of public safety." Federal Communications Commission Report and Order In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 FCC Rcd. 14014, at 4-5. The TCPA addressed these concerns by imposing *Page 5 
restrictions on these telemarketing practices by limiting "the use of an automatic telephone dialing systems, artificial and prerecorded messages, and telephone facsimile machines to send unsolicited advertisements." Id. at 5.
 {¶ 15} Prior to the Act's passage, Congress was made aware that "a `festering problem [had] arisen from the so-called `junk fax' * * * [and that] the `proliferation of fax machines has been accompanied by explosive growth in unsolicited facsimile advertising, or `junk fax.'"Grady v. Lenders Interactive Svcs., 8th Dist. No. 83966, 2004-Ohio-4239, at ¶ 32-33. Specifically, Congress heard testimony where witnesses warned of the potential for abuse regarding "junk fax" and the need to protect individuals and businesses from receiving these unwanted faxes.
 {¶ 16} Representative Edward J. Markey, who introduced the Facsimile Advertising Regulation Act, the predecessor to the TCPA, expressed the overriding concern and the problems inherent with the receipt of unsolicited advertisements sent via the fax machine as follows:
 {¶ 17} "Unsolicited advertising is beginning to clog fax lines, restricting the owners' ability to use their machines for the purposes they originally bought them for and generating operating costs the users can't control. Unlike junk mail, which can be discarded, or solicitation phone calls, which can be refused or hung up, junk fax ties up the recipient's line until it has been received and printed. The recipient's machine is unavailable for business and he or she incurs the high cost for supplies before knowing whether the message is either wanted or needed." 135 Cong. Rec. E 1462 (May 2, 1989, statement of Rep. Edward Markey, 101st Cong.) Representative Markey further testified: "To quote an article from the Washington Post, `receiving junk fax is like getting junk mail with postage due.' Succinctly put, using a facsimile machine to send *Page 6 
unsolicited advertising not only shifts costs from the advertiser to the recipient, but keeps an important business machine from being used for its intended purpose." 136 Cong. R. H 5818 (July 30, 1990), 101st Cong. 2nd Sess., statement of Rep. Markey, p. 5).
 {¶ 18} Thus, a major impetus behind Congress's decision to restrict unsolicited advertisements sent by fax was "the fact that costs were being shifted from advertisers to recipients" and that "[s]uch advertisements could tie up a machine when its owner had a `legitimate' use for it." Sorkin at 1018. In fact, Congress was warned that the threat posed by the failure to regulate unsolicited advertisements was a potentially massive one, because, according to research presented to the Congressional subcommittee, "at least one fax advertiser could routinely send 60,000 fax advertisements per week." Missouri v. American BlastFax, Inc. (C.A. 8, 2003), 323 F.3d 649, 655. Furthermore, evidence presented to the 102nd Congress demonstrated that "unsolicited fax advertisements can shift to the recipient more than one hundred dollars per year in direct costs * * * [and] that the costs and amount of interference resulting from unrestrained fax advertising continue to be significant." Id.
 {¶ 19} With these concerns in mind, Congress enacted the TCPA, which, under former Section 227(B)(1)(C) of the Act, which was modified slightly with no substantive changes[3], makes it unlawful "to use any telephone facsimile machine * * * to send an unsolicited advertisement to a telephone facsimile machine * * *" unless the sender has an established business relationship with the recipient or has "prior express invitation or permission of the recipient" to receive the fax. Section 227(B)(1)(C), Title 47, *Page 7 
U.S. Code.[4] When a violation of the TCPA is found, the sender is fined a minimum of $500 for each violation. Section 227(b)(3)(B), Title 47, U.S. Code. Treble damages may be imposed if the recipient can prove that the "defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, * * *." Id.
 {¶ 20} Although the receipt of one "unsolicited advertisement" may violate the TCPA, (see Reichenbach at ¶ 29), what Congress did not intend as a result of the passage of the TCPA was the creation of a cottage industry for litigation. Nevertheless, this is precisely what has transpired. "The private right of action and statutory damage provisions of the TCPA have spawned an industry of junk fax litigation." Caswell, Regulating Faxing Activity Under State and Federal Law (2005), 34 Colo. Law. 63, 65. As one commentator has noted: "It seems that although Congress and the FCC were not necessarily panning for gold when they passed the TCPA, plaintiffs may have a different agenda." Carey, Fax Blasting at the OK Corral: Is the FCC Shooting from the hip? (2005), 18 Loy. Consumer L.Rev. 1, 39. Particularly where class actions are pursued successfully, junk fax suits have resulted in multi-million dollar verdicts. Id. at 40.
 {¶ 21} What Constitutes an Unsolicited Advertisement Under theTCPA
 {¶ 22} The TCPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." Section 227(a)(5), Title 47, U.S. Code. *Page 8 
 {¶ 23} In this case, the trial court found that the faxed document was not an advertisement because it "was sent for the purpose of exchanging information between members of the Chamber of Commerce to network and develop a mutually beneficial partnership. The essence of the document was not commercial in nature. It was informational and descriptive, but it did not make qualitative statements or promote defendant's services as one would generally find in a commercial solicitation or marketing materials. The document was one which reflected a desire to network businesses, consistent with a mission of the chamber of commerce, not to commercially advertise defendant's services. The court cannot conclude that the facsimile is an advertisement. Having found that the subject facsimile is not an `advertisement,' it is not necessary for the court to determine whether the facsimile was `unsolicited.'"
 {¶ 24} The sole issue before this court is whether there was competent, credible evidence to support the court's conclusion that the faxed document was not an "advertisement" under the TCPA's definition. PBI argues that the since the document is commercial in nature, advertises the availability of Bryant Stratton services, makes quality statements about the benefits offered by the college, and contains qualitative facts about the college, it is an advertisement. For support, PBI relies on Charvat v. Crawford, 155 Ohio App.3d 161,2003-Ohio-5891 and Margulis v. P M Consulting, Inc. (2003),121 S.W.3d 246. However, we find that these decisions are readily distinguishable from the case at hand.
 {¶ 25} In Crawford, the plaintiff received two phone calls at his residence from the defendant company via a prerecorded message player. The content of the calls asked the recipient if he or she would like to receive free information. The message stated that the company was "looking for 25 people in the Columbus area to train" and *Page 9 
that individuals would have the ability to work at home and earn "up to five hundred to twenty five hundred dollars a month without interfering with what you're presently doing." Id. at ¶ 5. The trial court granted summary judgment in defendant's favor. The Tenth District reversed on appeal. The court held that "a prerecorded message that contains free offers and information about services and that asks the consumer to call a toll-free number to learn more is an unsolicited advertisement under the TCPA if sent without the called party's express invitation or permission." Id. ¶ 16.
 {¶ 26} In the P M Consulting decision, the plaintiff brought suit under the TCPA after receiving from defendant company a prerecorded telemarketing call telling her that she was eligible to receive complimentary vacation packages. The trial court granted summary judgment in favor of the consumer. The court of appeals affirmed, finding that "[t]he text here clearly falls within the type of messages the FCC wanted to prohibit in amending 42 U.S.C. Section 227 to include `telephone solicitations'; the call actually describes a vacation destination and contains a purported `free offer.'" Id. at 251.
 {¶ 27} In both the Crawford and P M Consulting cases, the prerecorded messages were telephone solicitations rather than transmitted faxes. It is important to recognize that "the TCPA treats fax advertising differently than it does telemarketing calls." 2004 FCC LEXIS 3184, at 3. With telemarketing calls, if a customer asks to be placed on a "do not call" list the company must honor that request. With faxes, "[n]either the statute nor the legislative history contemplates a mechanism for [recipients] to `opt out' of unwanted fax transmissions, as is the case with telemarketing calls." Id.
 {¶ 28} Regardless of this distinction, we still would find that the decisions relied on by PBI are unpersuasive. The FCC has determined that with respect to telephone *Page 10 
solicitations, "the prerecorded message rule should not turn on the caller's characterization of the call, but on the purpose of the message." Id., citing Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, Part II, 68 Fed. Reg. at 44162. The prerecorded messages in the Crawford and P M Consulting cases were delivered to the recipients in order to encourage them to purchase their services. In contrast, the document faxed by Bryant Stratton, which was directed only to Chamber of Commerce members, including PBI, was not intended to commercially advertise the college or to specifically have persons enroll in Bryant Stratton. Rather, according to the Bryant Stratton employee who transmitted the fax, the fax was sent in order to "develop relationships with businesses in the area." Although page two of the fax contained factual information about the college, the letter (page one) explained Bryant Stratton's desire to "develop some type of mutually beneficial partnership, such as a referral exchange, internships, graduate placement, or continuing education for your employees * * *."
 {¶ 29} The fact that PBI may have objected to the receipt of the fax in question does not mean that the fax itself was an advertisement or a piece of "junk fax" prohibited under the Act. The legislative history demonstrates that the TCPA was passed in order to restrict the influx of unwanted junk fax, to reduce an advertiser's ability to tie up a business owner's fax lines, and to prevent the advertising from spreading the costs to the business owner. In essence, the Act was designed to ban "nuisance faxes" and to stop "the junk advertiser [who] is a nuisance who wants to print its [advertisement] on your paper . . . [and] seizes your fax machine so that it is not available for calls you want or need." American Blast Fax, Inc. at 655. *Page 11 
 {¶ 30} When read in context, we find that the faxed document sent by Bryant Stratton differs from the genre of faxed documents the TCPA intended to ban. The Bryant Stratton fax was not a "junk fax" intended to promote and entice its recipient into purchasing its product or service. Simply put, in contrast to those documents clearly prohibited under the TCPA as unsolicited advertisements, the faxed document here was not being sent as a mere solicitation "advertising the commercial availability or quality of any property, goods, or services." Rather, the fax was an invitation from one chamber member to another member who had voluntarily supplied its fax number to all other chamber members through the directory to exchange mutually beneficial information which in the parlance of modern-day business-speak means "networking."
 {¶ 31} Therefore, we conclude that the faxed document was not the type of fax the TCPA was intended to prohibit. As evidenced from the legislative intent, the Act was designed to ban junk faxes, not to encourage a cottage industry to encourage overly zealous litigants or their attorneys from profiting from the unintended consequence of the Act. Consequently, based upon the evidence presented, including the fax itself and the underlying circumstances surrounding its transmission, we find that there was competent credible evidence to support the trial court's conclusion that the document was not an "advertisement" for purposes of the TCPA.
 {¶ 32} We overrule PBI's assignment of error.
 {¶ 33} The judgment of the Lake County Court of Common Pleas is affirmed.
CYNTHIA WESTCOTT RICE, P.J., concurs, DIANE V. GRENDELL, J., concurs in judgment only.
[1] Pursuant to Section 227(b)(3)(B), Title 47, U.S. Code, any person or entity may bring a TCPA action in state court. Reichenbach v.Financial Freedom Centers, Inc., 6th Dist. No. L-03-1357,2004-Ohio-6164, ¶ 27.
[2] The 101st and 102nd Congress considered several bills concerning telemarketing practices. The final bill that became the TCPA combined parts of H.R. 1304, S. 1410 and S. 1462 that were before the 102ndCongress.
[3] This lawsuit was filed on May 24, 2005 and the former version of the TCPA therefore applies. However, on July 9, 2005, the Act was modified. Included within the changes were amendments to paragraph (1)(C) .
[4] The July 2005 amendments were part of Congress's passage of the Junk Fax Prevention Act (JFPA), which inter alia codified the principle that unsolicited faxes could be sent if there was an established business relationship and further provided that the recipient's prior express permission or invitation need not be in writing. See Section 227, Title 47, U.S. Code. *Page 1