**Philip J. CHARVAT, Plaintiff,**

v.

**ECHOSTAR SATELLITE, LLC, Defendant.**

**Case No. 2:07–cv–1000.**

United States District Court, S.D. Ohio, Eastern Division.

Dec. 15, 2009.

John William Ferron, Jessica G. Fallon, Lisa A. Wafer, Ferron & Associates, Columbus, OH, for Plaintiff.

Benjamen E. Kern, Law Office of Benjamen E. Kern, Hilliard, OH, Eric Larson Zalud, Benesch Friedlander Coplan & Aronoff, Cleveland, OH, Ryan P. Hatch, Benesch Friedlander Coplan & Aronoff, LLP, Columbus, OH, for Defendant.

### MEMORANDUM OPINION & ORDER

JOHN D. HOLSCHUH, District Judge.

Plaintiff Philip J. Charvat filed suit against Defendant EchoStar Satellite, LLC ("Echostar"), alleging violations of the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227, and the Ohio Consumer Sales Practices Act ("OCSPA"), Ohio Revised Code § 1345.02. He also brought common law claims of invasion of privacy and nuisance per se. All of his claims arise out of thirty telemarketing calls allegedly made to his residence by EchoStar or its authorized agents. This matter is currently before the Court on EchoStar's motion for summary judgment (Doc. 33) and on EchoStar's unopposed motion for leave to file a response to Plaintiff's Notice of Supplemental Authority (Doc. 49). For the reasons stated below, the Court grants both motions.

### I. Background and Procedural History

EchoStar delivers DISH Network® brand direct broadcast satellite television products and services throughout the United States. (Van Emst Aff. ¶ 3; Ex. A to Mot. Summ. J.) According to the First Amended Complaint, between June of 2004 and August of 2007, Plaintiff received thirty calls from telemarketers attempting to sell DISH Network® brand satellite television programming. Twenty-seven of these calls, placed to Plaintiff's two residential phone lines, were pre-recorded messages (calls 1–21, 23, 24, 27–30) and three calls were placed by live agents (calls 22, 25 and 26). At the conclusion of many of the prerecorded messages, a live operator came on the line. Plaintiff requested on several occasions to be placed on the do-not-call list. (Pl. Aff. ¶ 7; Ex. A to Mem. in Opp'n to Mot. Summ. J.).

Plaintiff recorded and tracked each call. (*Id.* at ¶¶ 8–9.) Through independent re-

search, Plaintiff discovered that the telephone calls were placed by several different companies including DishTV Now, Inc. (calls 3–4, 6–9), Marrik Dish Co. (calls 10 and 13), Marketing Guru, Inc. dba SatelliteSales.com (calls 12, 15, 17–19, 23), JSR Enterprises (calls 20–21, 24), and DishPronto, Inc. (call 22) ("the Retailers"). (*Id.* at ¶¶ 10–25; Ex. B to Mot. Summ. J.). These particular companies, like thousands of others, had entered into Retailer Agreements with EchoStar whereby they were authorized, as independent contractors, to advertise, promote, and solicit orders for DISH Network® brand programming and to install and activate the necessary satellite television equipment. (Van Emst Aff. ¶¶ 2, 4.) According to Plaintiff, calls 1–2, 11, 14, 16, and 25–30 were placed by callers who identified themselves as working for Dish, Dish Network, or Dish Satellite TV. (Pl. Aff. ¶ 25.)[1]

Plaintiff filed suit against EchoStar alleging multiple violations of the TCPA and the OC SPA for each call. He also brought common law claims of invasion of privacy and nuisance per se. On December 16, 2008, 621 F.Supp.2d 549 (S.D.Ohio 2008), this Court issued a Memorandum Opinion and Order granting in part EchoStar's motion for partial judgment on the pleadings, and dismissing Counts 26, 27, 31, and 32 of the First Amended Complaint.

EchoStar has now moved for summary judgment. It essentially argues that because it did not initiate the calls, and because the Retailers who did initiate the calls are independent contractors, EchoStar cannot be held liable for the alleged violations. Likewise, EchoStar maintains that because it did not "knowingly or willfully" violate the law, it cannot be held liable for treble damages under the TCPA or for attorney fees under the OCSPA. EchoStar further argues that because it engaged in no intentional misconduct, Plaintiff's common law tort claims fail as well.

## II. Standard of Review

Although summary judgment should be cautiously invoked, it is an integral part of the Federal Rules, which are designed "to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 1). The standard for summary judgment is found in Federal Rule of Civil Procedure 56(c):

> [Summary judgment] . . . should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Summary judgment will be granted "only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is . . . [and where] no genuine issue remains for trial, . . . [for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." *Poller v. Columbia Broadcasting Sys.,* 368 U.S. 464, 467, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962) (quoting *Sartor v. Arkansas Natural Gas Corp.,* 321 U.S. 620, 627, 64 S.Ct. 724, 88 L.Ed. 967 (1944)). *See also Lansing Dairy, Inc. v. Espy,* 39 F.3d 1339, 1347 (6th Cir.1994).

Moreover, the purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. *Lashlee v. Sumner,* 570

---

1. EchoStar maintains that calls 1–6, 11, 14, 16–18, and 25–30 were not made by EchoStar or any of its authorized Retailers. (Van Emst Aff. ¶ 4.)

F.2d 107, 111 (6th Cir.1978). The court's duty is to determine only whether sufficient evidence has been presented to make the issue of fact a proper question for the jury; it does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Weaver v. Shadoan,* 340 F.3d 398, 405 (6th Cir. 2003).

■ In a motion for summary judgment, the moving party bears the initial burden of showing that no genuine issue as to any material fact exists and that it is entitled to a judgment as a matter of law. *Leary v. Daeschner,* 349 F.3d 888, 897 (6th Cir.2003). All the evidence and facts, as well as inferences to be drawn from the underlying facts, must be considered in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Wade v. Knoxville Util. Bd.,* 259 F.3d 452, 460 (6th Cir.2001). Additionally, any "unexplained gaps" in materials submitted by the moving party, if pertinent to material issues of fact, justify denial of a motion for summary judgment. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157–60, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

■ "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505 (emphasis in original). A "material" fact is one that "would have [the] effect of establishing or refuting one of [the] essential elements of a cause of action or defense asserted by the parties, and would necessarily affect [the] application of [an] appropriate principle of law to the rights and obligations of the parties." *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984). *See also Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. An issue of material fact is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. *See also Leary,* 349 F.3d at 897.

If the moving party meets its burden, and adequate time for discovery has been provided, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. The nonmoving party must demonstrate that "there is a genuine issue for trial," and "cannot rest on her pleadings." *Hall v. Tollett,* 128 F.3d 418, 422 (6th Cir.1997).

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed.R.Civ.P. 56(e).

The existence of a mere scintilla of evidence in support of the opposing party's position is insufficient; there must be evidence on which the jury could reasonably find for the opposing party. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. The nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Companies, Inc.,* 8 F.3d 335, 340 (6th Cir.1993). The court may,

however, enter summary judgment if it concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the presented evidence. *Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505; *Lansing Dairy, Inc.,* 39 F.3d at 1347.

## III. Analysis

### A. TCPA and OCSPA Claims

■■■ Plaintiff's First Amended Complaint alleges multiple violations of the TCPA and the OCSPA with respect to each call.[2] The TCPA was enacted by Congress "to protect the privacy rights of citizens by restricting the use of the telephone network for unsolicited advertising." *In the Matter of Consumer.Net v. AT & T Corp.,* 15 F.C.C.R. 281, 282 (1999). The TCPA provides in relevant part:

A person who has received more than one telephone call within any 12–month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may ... bring in an appropriate court ...

(A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation,

(B) an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or

(c) both such actions.

47 U.S.C. § 227(c)(5). Liability under the TCPA may exist not only for the person making the call, but also for the entity on whose behalf the call is made. *See Charvat v. Farmers Insurance Columbus* (2008), 178 Ohio App.3d 118, 2008–Ohio–

4353, 897 N.E.2d 167, at ¶ 10. At issue in this case is whether, under the circumstances presented here, EchoStar may be held liable for the alleged violations of its Retailers.

The TCPA and federal regulations enacted pursuant to that statute make it unlawful to "initiate" a call to a residential telephone line using a prerecorded voice to deliver a message without the prior express consent of the called party. 47 U.S.C. § 227(b)(1)(B); 47 C.F.R. § 64.1200(a)(2). Regulations also require all prerecorded messages to state the identity and telephone number of the business responsible for "initiating" the call. 47 C.F.R. § 64.1200(b)(1) and (b)(2). In addition, no entity may "initiate" a telemarketing call without first instituting various procedures that meet certain minimum standards. These include, in relevant part: having a written policy, available on demand, for maintaining a do-not-call list (47 C.F.R. § 64.1200(d)(1)); training personnel engaged in telemarketing about the existence and use of the do-not-call list (47 C.F.R. § 64.1200(d)(2)); establishing procedures for recording and honoring do-not-call requests (47 C.F.R. § 64.1200(d)(3)); providing the called party with the name of the individual caller, the name of the person or entity on behalf whose call is being made, and a telephone number or address at which the person or entity may be contacted (47 C.F.R. § 64.1200(d)(4)); and maintaining a record of a person's do-not call request (47 C.F.R. § 64.1200(d)(6)).

Plaintiff contends that each phone call he received violated at least one of these provisions. EchoStar argues that sum-

---

**2.** Ohio courts have held that "[a] violation of the TCPA is generally considered a violation of the OCSPA as well." *Taylor v. XRG, Inc.,* 10th Dist. No. 06AP–839, 2007–Ohio3209, at ¶ 36, 2007 WL 1816142. Therefore, because

the OCSPA claims alleging an unfair and deceptive trade practice are derivative, there is no need for the Court to conduct a separate analysis of them.

mary judgment is warranted on these claims because it did not "initiate" the prerecorded telephone calls as required to establish violations of 47 U.S.C. § 227(b)(1)(B) and the accompanying regulations. EchoStar did not place the phone calls to Plaintiff's residence and did not operate or maintain control over any automated dialing equipment that initiated the calls. (Van Emst Aff. ¶ 9.) Rather, each telemarketing call was "initiated" by one of the Retailers. (*Id.* at ¶ 5.) EchoStar did not provide the Retailers with Plaintiff's telephone numbers or instruct them to call Plaintiff's residence. Until Plaintiff filed suit, EchoStar was not even aware that the Retailers had made the calls. (*Id.* at ¶ 9.)

Plaintiff argues that even if EchoStar did not "initiate" the calls, EchoStar can still be held liable for the TCPA violations because the calls were made by authorized agents acting "on behalf of" EchoStar to sell DISH Network® brand satellite services. EchoStar, however, denies that the calls were made by authorized agents acting on its behalf. The Retailer Agreements at issue define the nature of the Retailers' contractual relationship with EchoStar as follows:

> INDEPENDENT CONTRACTOR: The relationship of the parties hereto is that of independent contractors. Retailer shall conduct its business as an independent contractor, and all persons employed in the conduct of such business shall be Retailer's employees only, and not employees of EchoStar or its Affiliates. Retailer shall prominently state its business name, address and phone number in all communications with the public ... Notwithstanding anything in this Agreement to the contrary, *Retailer ... shall not, under any circumstances, hold itself out to the public or represent that it is an agent, employee, subcontractor or Affiliate of EchoStar* or any EchoStar Affiliate ... [I]n no event

shall Retailer use EchoStar's name or the name of any EchoStar Affiliate in any manner which would tend to imply that Retailer is an Affiliate of EchoStar or that Retailer is an agent, subcontractor or employee of EchoStar or one of its Affiliates or that Retailer is acting or is authorized to act on behalf of EchoStar or one of its Affiliates. This Agreement does not constitute a joint venture or partnership. It is further understood and agreed that Retailer has no right or authority to make any representation, promise or agreement or take any action on behalf of EchoStar or an EchoStar Affiliate.

(¶ 11 of Retailer Agreements (Exs. C–G to Mot. Summ. J.); Van Emst Aff. ¶ 5) (emphasis added).

As Plaintiff notes, even though the Retailers are designated as "independent contractors" and EchoStar specifically disavows any "agency" relationship, this fact is not necessarily dispositive with respect to the question of whether EchoStar may be held liable for the violations. *See, e.g., Worsham v. Nationwide Ins. Co.,* 138 Md. App. 487, 772 A.2d 868, 878 (Md.Ct. Spec.App.2001) (the fact that illegal calls were made by independent contractor "would not, in itself, insulate [defendant] from liability under the TCPA"); *Hooters of Augusta, Inc. v. Nicholson,* 245 Ga.App. 363, 537 S.E.2d 468, 472 (2000) (even if jury found that unsolicited fax advertisement was sent by an independent contractor, Hooters may still be liable under the TCPA).

■ Regardless of whether someone is labeled an independent contractor, when the hiring party retains the "right to control the manner or means" by which a particular job is completed, it may be said that the hired party is actually an employee or agent who is acting "on behalf of"

the hiring party. *See Bostic v. Connor,* 37 Ohio St.3d 144, 146, 524 N.E.2d 881, 883 (Ohio 1988). Under these circumstances, the hiring party may be held vicariously liable for its agent's wrongdoing.

For example, in *Worsham,* the plaintiff received two telephone calls from telemarketers calling "for" Nationwide Insurance Company. The first telemarketer worked for Rick Gerety & Associates, an insurance agency that had an independent contractor agreement with Nationwide. The second telemarketer presumably worked for a different Nationwide insurance agent. Plaintiff filed suit against Nationwide alleging violations of the TCPA. The trial court granted Nationwide's motion for summary judgment and Plaintiff appealed.

The appellate court found that there was a genuine issue of material fact concerning the nature of the contractual relationship between Gerety and Nationwide. The court noted that even though Gerety was supposedly an independent contractor, it was unclear whether Nationwide controlled the *content* of the solicitations used by the insurance agents. 772 A.2d at 879. Plaintiff maintained that both telemarketers used nearly identical scripts even though they were supposedly employed by different agents. The court therefore concluded that a reasonable jury could find that "Nationwide may have directed or authorized Gerety and other agents in the area to conduct telephone solicitations via a common script *created or approved* by Nationwide." *Id.* (emphasis added).

*Hooters* is another example of a case in which a court found that a hiring party could be held liable under the TCPA for the conduct of its independent contractor. In *Hooters,* the plaintiff alleged that he had received an unsolicited fax advertisement in violation of the TCPA. He sued Bambi Clark d/b/a Value Fax of Augusta, who sent the fax, and Hooters of Augusta, the company that had hired Ms. Clark to advertise its business. Hooters argued that it could not be held liable for Clark's conduct because she was an independent contractor. The court, however, found that there was "a jury question as to Hooters' right to control the means, method, and manner of executing the work, specifically in terms of designing and producing the ad and ... in terms of deciding who would receive the newsletter." 537 S.E.2d at 472.

This case, however, is clearly factually distinguishable from *Worsham* and *Hooters.* It is undisputed that EchoStar maintains no control over the method of advertising or the means by which the Retailers carry out their marketing activities. According to Blake Van Emst, EchoStar's vice president,

6. EchoStar does not, and cannot, control the manner and means in which the Retailers market and sell DISH Network® brand systems and packages. The details of when, how, and by whom the actual marketing and sales are to be performed are left to the Retailers. The Retailers may use any lawful form of advertising, including, but not limited to, telemarketing, email solicitation, direct mail, and newspaper advertising. The Retailers are free to market the goods and services of any other entity, including competitors of EchoStar.

EchoStar does not supply, approve, or review the names, addresses, or other contact information of persons or entities to whom the Retailers (or their third-party marketing vendors) make telephone calls. EchoStar has no way of knowing who the Retailers are calling

or the referring source of new orders. . . .

(Van Emst Aff. ¶¶ 6–7.)

■ Plaintiff fails to put forth any evidence from which a reasonable jury could find that EchoStar retains the right to control the telemarketing activities of its Retailers. Citing various provisions in the Retailer Agreements (Exs. C–G to Mot. Summ. J.), Plaintiff notes that EchoStar retains control over the type of programming offered (¶ 4.1) and the prices to be charged (¶ 5), retains ownership of subscribers' contact information (¶ 9.5), and reserves the right to accept or reject any programming orders submitted by the Retailers (¶ 7.2). But these provisions are all irrelevant to the question of whether EchoStar controls the manner or means by which the Retailers *market* the product.

In support of his argument that EchoStar retains the right to control the Retailers' marketing efforts, Plaintiff merely notes that EchoStar demands that the Retailers comply with all federal, state, and local laws (¶ 9.1), and that EchoStar regularly reminds them of that obligation (Van Emst Aff. ¶¶ 7–8; Ex. H to Mot. Summ. J.). EchoStar also reserves the right to take disciplinary action, including termination of the right to market EchoStar's equipment and services, against Retailers who fail to comply with the law, including the law governing telemarketing. (¶ 10.4(v)). In addition, EchoStar demands that the Retailers indemnify it for any loss incurred in connection with the agreement, including loss incurred as a result of the Retailers' marketing efforts. (¶ 13).

These general provisions are insufficient to establish the "right of control" needed to subject EchoStar to liability under the TCPA for the actions of the Retailers. There is a significant difference between generally requiring the Retailers to comply with the law, and retaining the right to micro-manage the Retailers' marketing efforts to ensure such compliance. Likewise, EchoStar's reservation of the right to take disciplinary action and to seek indemnification against Retailers engaging in unlawful conduct may well discourage such conduct, but it is largely irrelevant to the question of whether EchoStar retains the right to control the manner or means by which the Retailers carry out their contractual duties.

The Retailers have the sole authority to determine how to best market Dish Network® brand products and whom to solicit. The Retailers also remain free to solicit business on behalf of other companies, including EchoStar's competitors. Under these circumstances, it cannot be said that the telemarketing calls were made on EchoStar's behalf such that EchoStar should be held vicariously liable for the Retailers' conduct.

Two cases are instructive. The first is *Charvat v. Farmers Insurance Columbus* (2008), 178 Ohio App.3d 118, 2008–Ohio–4353, 897 N.E.2d 167, another TCPA case filed by Plaintiff. In that case, Lonnie Perlman, an insurance agent who sold Farmers Insurance, wanted to increase his sales. He entered into a contract with Take the Lead, a telemarketing company. Take the Lead then contacted Plaintiff for the purpose of selling Farmers Insurance. Farmers, however, had not authorized Take the Lead to act on its behalf. Take the Lead forwarded Plaintiff's contact information to Perlman, neglecting to tell Perlman that Plaintiff had requested to be placed on the do-not-call list. Thereafter, Plaintiff received three calls from Perlman's employees. Plaintiff sued Perlman and Farmers for violations of the TCPA. Farmers moved for summary judgment. The trial court granted that motion, find-

ing that none of the calls were placed "on behalf of" Farmers. Plaintiff appealed.

The appellate court found that although Perlman was a "captive agent" of Farmers, he was also authorized to sell insurance on behalf of other companies when Farmers did not offer the particular product that was needed. Moreover, the contractual nature of the relationship between Perlman and Farmers was that of an independent contractor, and Perlman had the sole authority to determine who to solicit business from and how to do it. *Id.* at ¶ 15. The court concluded that, under these circumstances, "appellant failed to present any genuine issue of material fact as to whether any of the phone calls were made on behalf of Farmers." *Id.* at ¶ 17.

The case of *Lary v. VSB Financial Consulting, Inc.*, 910 So.2d 1280 (Ala.Civ.App. 2005), involving unsolicited fax advertisements, is also instructive. In that case, OnCourse Technologies, Inc. hired LBI as an independent contractor to promote its business interests. LBI then hired VSB as an independent contractor. VSB's employee sent Lary the unsolicited fax advertisement. The court found that VSB could be held vicariously liable under the TCPA for its employee's conduct. *Id.* at 1283. However, because there was no evidence that any person under LBI's direct control sent the unsolicited advertisement or played any part in the decision to send it, the court found that summary judgment was properly entered in LBI's favor. *Id.*

As in *Charvat* and *Lary*, based on the evidence presented, no reasonable jury could find that EchoStar retained the right to control the manner or means by which the Retailers carried out their contractual duties. No person under EchoStar's direct control engaged in the conduct that allegedly violated the TCPA. The Retailers truly acted as independent contractors as opposed to agents of EchoStar.

Plaintiff recently filed a Notice of Supplemental Authority, noting that in *United States of America v. Dish Network, LLC,* Case No. 3:09–cv–3073, the United States District Court for the Central District of Illinois recently denied Dish Network's motion to dismiss similar claims under the TCPA. The court noted that the regulations impose liability on sellers "on whose behalf" a telephone solicitation is made. *See* 47 C.F.R. § 64.1200(c)(2). It then noted:

> In this case, the Complaint alleged that Dish Network entered into relationships with the Dealers and authorized the Dealers to sell Dish Network products and services through telephone solicitations. Dish Network authorized the dealers to use Dish Network's name. Dish Network provided various types of support for the Dealers to facilitate the marketing of Dish Network products through telephone solicitations. The Dealers made illegal telephone solicitations to sell Dish Network products and services under these arrangements. These allegations, if true, could plausibly establish that the Dealers acted on behalf of Dish Network.

(Ex. to Pl.'s Notice of Supp. Auth. at 2). Plaintiff maintains that this case supports his claims.

EchoStar has moved for leave to file a response to Plaintiff's Notice of Supplemental Authority. For good cause shown, that unopposed motion is granted. As EchoStar notes in its response, the Central District of Illinois case was decided in the context of a motion to dismiss. The court simply decided that the allegations contained in the Complaint, "if true, could plausibly establish that the Dealers acted on behalf of Dish Network." In contrast, EchoStar's motion is before this Court on a motion for summary judgment. The procedural posture is therefore clearly dis-

tinguishable. Based on the evidence presented, this Court has concluded that regardless of any allegations contained in the Complaint, Plaintiff has failed to put forth sufficient evidence from which a reasonable jury could find that EchoStar maintained the kind of control needed for liability to attach under the TCPA.

Plaintiff's remaining arguments are meritless. First, he relies on 47 U.S.C. § 217, which reads as follows:

In construing and enforcing the provisions of this chapter, the act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user as well as that of the person.

47 U.S.C. § 217.

[7] This statute would render EchoStar liable for the Retailers' violations only if EchoStar is "common carrier or user" and the Retailers were acting "for" EchoStar. Plaintiff's argument fails on both accounts. Plaintiff maintains that EchoStar is a "user." As Plaintiff correctly notes, the term "user" is not defined by statute. In the Court's view, the most logical reading is "common carrier or user [of a common carrier]." Plaintiff, however, turns to the Federal Standard 1037C, Glossary of Telecommunication Terms, which defines a "user" as "[a] person, organization, or other entity (including a computer or computer system), that employs the services provided by a telecommunication system, or by an information processing system, for

transfer of information." Plaintiff then reasons that a "user" includes anyone who "uses" a telephone, including EchoStar. The problem with Plaintiff's logic is that EchoStar did not "use" a telephone system in connection with the alleged violations. EchoStar did not place the calls or direct others to place the calls. In addition, as the Court has previously held, the Retailers were acting as independent contractors, not as agents or other persons acting "for" EchoStar. Section 217 is therefore inapplicable.

■ Plaintiff also argues that simple principles of Ohio agency law render EchoStar liable for the acts of the Retailers, which EchoStar expressly authorizes to market Dish Network® brand products and services. The Court rejects this argument. Paragraph 11 of the Retailer Agreements specifically disavows any agency relationship and specifically prohibits the Retailers from using EchoStar's name in any manner that would imply that the Retailers are acting or authorized to act on EchoStar's behalf.[3]

■ Finally, Plaintiff argues that EchoStar should be held liable for the Retailers' conduct because, as a general rule, statutory duties cannot be delegated to agents or independent contractors. Plaintiff, however, fails to identify any *statutory duty* allegedly delegated to the Retailers by EchoStar. The Court therefore rejects this argument also.

For the reasons stated above, EchoStar is entitled to summary judgment on all of

---

**3.** For the same reason, Plaintiff's reliance on an opinion issued by the Federal Communications Commission ("FCC") is misplaced. In discussing whether telephone solicitations made by or on behalf of tax-exempt nonprofit organizations were subject to the TCPA, the FCC stated, "[o]ur rules generally establish that the party on whose behalf a solicitation is

made bears ultimate responsibility for any violations. Calls placed by an agent of the telemarketer are treated as if the telemarketer itself placed the call." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 10 F.C.C.R. 12391, 12397 (1995) (footnote omitted).

Plaintiff's claims predicated on the TCPA, its accompanying regulations, and the corresponding OCSPA claims. This leaves only Counts 5 and 22, in which Plaintiff alleges that in calls 1 and 4, an authorized agent of EchoStar violated Ohio Administrative Code § 109:4–3–04(C) and Ohio Revised Code § 1345.02(A) by offering a "free" vacation without setting forth clearly and conspicuously at the outset all of the applicable terms, conditions and obligations. As Plaintiff notes, EchoStar did not specifically address these claims in its motion for summary judgment. Nevertheless, EchoStar did move for summary judgment on the First Amended Complaint as a whole and, as Echo Star notes in its reply brief, a finding that the Retailers were not acting on Echo Star's behalf is dispositive with respect to these claims also. Because EchoStar is not subject to liability under the TCPA or the OCSPA, there is no need to discuss whether Plaintiff is entitled to treble damages or attorney fees under those statutes.

## B. Invasion of Privacy Claim

■ Plaintiff's Amended Complaint also alleges that the conduct of EchoStar and/or its authorized agents invaded his privacy and intruded on his solitude and seclusion. Ohio recognizes a cause of action for invasion of privacy based on "wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities." *Sustin v. Fee,* 69 Ohio St.2d 143, 145, 431 N.E.2d 992, 993 (Ohio 1982) (quoting *Housh v. Peth,* 165 Ohio St. 35, 133 N.E.2d 340 (Ohio 1956)). The wrongful intrusion into another's solitude or seclusion must be intentional. *Sustin,* 69 Ohio St.2d at 145, 431 N.E.2d at 993.

■ EchoStar argues that summary judgment is appropriate on Plaintiff's inva-sion of privacy claim because Plaintiff cannot prove any "intentional intrusion" by EchoStar. The Retailers were solely responsible for the conduct that allegedly invaded Plaintiff's privacy. Based on the evidence presented, Plaintiff cannot show that EchoStar engaged in any intentional conduct directed at him. EchoStar did not place any of the calls, did not instruct others to place the calls, and did not even know that the calls were being made. The Court therefore finds that EchoStar is entitled to summary judgment on the invasion of privacy claim.

## C. Nuisance Per Se Claim

■ Plaintiff also alleges that EchoStar's conduct or the conduct of its authorized agents constitutes a nuisance per se. The Ohio Supreme Court has defined a nuisance per se, or absolute nuisance, as follows:

> a distinct civil wrong, arising or resulting from the invasion of a legally protected interest, and consisting of an unreasonable interference with the use and enjoyment of the property of another; the doing of anything, or the permitting of anything under one's control or direction to be done without just cause or excuse, the necessary consequence of which interferes with or annoys another in the enjoyment of his legal rights ...

*Taylor v. City of Cincinnati,* 143 Ohio St. 426, 440, 55 N.E.2d 724, 730 (Ohio 1944). In *Metzger v. Pennsylvania, O & D R.R. Co.,* the Ohio Supreme Court defined nuisance per se as "either a culpable and intentional act resulting in harm, or an act involving culpable and unlawful conduct causing unintentional harm, or a nonculpable act resulting in accidental harm, for which, because of the hazards involved, absolute liability attaches notwithstanding the absence of fault." 146 Ohio St. 406, 406, 66 N.E.2d 203, 203 (Ohio 1946). More

recently, the Ohio Supreme Court paraphrased this definition as follows: "An absolute nuisance is based on either intentional conduct or an abnormally dangerous condition that cannot be maintained without injury to property, no matter what care is taken." *State ex rel. RTG, Inc. v. State,* 98 Ohio St.3d 1, 13, 780 N.E.2d 998, 1010 (Ohio 2002).

 Plaintiff's claim is not based on an "abnormally dangerous condition that cannot be maintained without injury to property." Therefore, intentional conduct must be shown. Echostar again argues that because Plaintiff cannot show any intentional conduct by Echostar with respect to the telephone calls at issue, summary judgment is warranted on Plaintiff's claim of nuisance per se. For the reasons previously discussed, the Court agrees.

## IV. Conclusion

For the reasons stated above, the Court **GRANTS** Defendant EchoStar's unopposed motion for leave to file a response to Plaintiff's Notice of Supplemental Authority (Doc. 49). It also **GRANTS** EchoStar's motion for summary judgment (Doc. 33) with respect to all remaining claims. The Clerk is directed to enter judgment in favor of Defendant.

**IT IS SO ORDERED.**