*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 10a0397p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

PHILIP J. CHARVAT,

        *Plaintiff-Appellant,*

    *v.*

ECHOSTAR SATELLITE, LLC,

        *Defendant-Appellee.*

No. 09-4525

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 07-01000—Mark R. Abel, Magistrate Judge,
John D. Holschuh, District Judge.

Argued: December 8, 2010

Decided and Filed: December 30, 2010

Before: SUTTON and GRIFFIN, Circuit Judges; BERTELSMAN, District Judge.[*]

_____

## COUNSEL

**ARGUED:** John W. Ferron, FERRON & ASSOCIATES, Columbus, Ohio, for Appellant. Eric Larson Zalud, BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP, Cleveland, Ohio, for Appellee. **ON BRIEF:** John W. Ferron, Lisa A. Wafer, FERRON & ASSOCIATES, Columbus, Ohio, Jessica G. Fallon, Columbus, Ohio, for Appellant. Eric Larson Zalud, BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP, Cleveland, Ohio, Benjamen E. Kern, LAW OFFICE OF BENJAMEN E. KERN, LLC, Columbus, Ohio, for Appellee.

---

[*]The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

―――――――――――

**OPINION**

―――――――――――

SUTTON, Circuit Judge.  Philip Charvat has not been shy in taking on the role of a private attorney general under the Telephone Consumer Protection Act.  Since 1998, he has filed claims  against at least twelve defendants in at least thirteen lawsuits under the Act.  *See Charvat v. GVN Mich., Inc.*, 561 F.3d 623 (6th Cir. 2009); *Charvat v. NMP, LLC*, 703 F. Supp. 2d 735 (S.D. Ohio 2010); *State ex rel. Charvat v. Frye*, 868 N.E.2d 270 (Ohio 2007); *Charvat v. Ryan*, 857 N.E.2d 1228 (Ohio 2006) (table opinion); *Charvat v. Dispatch Consumer Servs., Inc.*, 769 N.E.2d 829 (Ohio 2002); *Charvat v. GVN Mich., Inc.*, No. 09AP-1075, 2010 WL 2706163 (Ohio Ct. App. July 8, 2010); *Charvat v. Credit Found. of Am.*, No. 08AP-477, 2008 WL 5381935 (Ohio Ct. App. Dec. 23, 2008); *Charvat v. Farmers Ins. Columbus, Inc.*, 897 N.E.2d 167 (Ohio Ct. App. 2008); *Charvat v. Telelytics, LLC*, No. 05AP-1279, 2006 WL 2574019 (Ohio Ct. App. Aug. 31, 2006); *Charvat v. Crawford*, 799 N.E.2d 661 (Ohio Ct. App. 2003); *Charvat v. Colo. Prime, Inc.*, No. 97APG09-1277, 1998 WL 634922 (Ohio Ct. App. 1998); *Charvat v. ATW, Inc.*, 712 N.E.2d 805 (Ohio Ct. App. 1998); *Charvat v. Cont'l Mortg. Servs., Inc.*, No. 99CVH12-10225, 2002 WL 1270183 (Ohio Ct. Com. Pl. June 1, 2000).

In his most recent lawsuit, Charvat sued EchoStar Satellite under the Act as well as under several regulations promulgated by the Federal Communications Commission (FCC) and Ohio law.  The district court dismissed four of Charvat's claims and granted EchoStar's motion for summary judgment on the remaining claims.  In considering Charvat's appeal, we invited the FCC, the agency that administers the Act, to express its views on several issues presented by the case.  The FCC answered several questions, demurred on others and suggested we refer the matter to the agency under the doctrine of primary jurisdiction.  For reasons elaborated below, we will refer the matter to the agency.

I.

EchoStar delivers DISH Network brand satellite television products. Between June 2004 and August 2007, Charvat received thirty calls from telemarketers attempting to sell DISH Network brand satellite television programming. Most of the calls consisted of pre-recorded messages. On several occasions, Charvat asked to be placed on the do-not-call list.

Charvat tracked the calls to several companies, including Dish TV Now, Inc., Marrik Dish Co., Marketing Guru, Inc. dba SatelliteSales.com, JSR Enterprises and Dish Pronto, Inc. All of the companies have signed retailer agreements with EchoStar, authorizing them to advertise, promote and solicit orders for DISH Network programming and to install and activate the equipment.

Claiming several violations per phone call, Charvat sued EchoStar for 307 violations of the Telephone Act and its accompanying regulations. He also brought claims under the Ohio consumer protection statute, Ohio Rev. Code Ann. § 1345.02, and Ohio common law. The district court dismissed several of the claims under the Telephone Act on the ground that Charvat could not recover damages for the first call, and it granted summary judgment on the remaining claims. Charvat appealed, challenging the court's disposition of his claims under the Telephone Act and the Ohio consumer protection statute.

II.

A word about jurisdiction is in order. The district court held that it had diversity jurisdiction over the case because the parties came from different States and because Charvat's 307 causes of action each requested between $500 and $1500 in damages, well over the $75,000 amount-in-controversy requirement. *See* 28 U.S.C. § 1332. That would make sense, save for another part of the court's decision. The court also held that Charvat could recover statutory damages only on a per-call basis, not on a per-violation basis, meaning Charvat could recover between $500 and $1500 for each of the 30 calls

that violated federal or state law, not between $500 and $1500 for each of the 307 violations that allegedly occurred in the calls.

Although courts gauge jurisdiction over a complaint from the time of filing, *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938), the "[l]ack of the jurisdictional amount from the outset—although not recognized until later—is not a subsequent change that can be ignored." *GVN Mich.*, 561 F.3d at 628 (internal quotation marks and citation omitted) (affirming determination that Charvat did not satisfy amount-in-controversy requirement once district court determined he could recover on per-call rather than per-violation basis). At the time Charvat filed his complaint, he did not satisfy the amount-in-controversy requirement because the Act did not allow him to recover the amount he claimed. *Id.*; *see also Jones v. Knox Exploration Corp.*, 2 F.3d 181, 183 (6th Cir. 1993). In light of the district court's unchallenged per-call ruling, it was a "legal certainty" at the time Charvat filed his complaint that he could recover at most $45,000 (30x $1500) for the statutory and regulatory claims. *See St. Paul Mercury Indem. Co.*, 303 U.S. at 289.

That is not the end of the matter. Charvat also requested "punitive damages" in connection with his common-law claims. And punitive damages may be aggregated with other damages to satisfy the amount-in-controversy requirement. *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 572–73 (6th Cir. 2001). But as the party invoking federal jurisdiction, Charvat bore the burden of satisfying the requirements of federal jurisdiction, *see Cleveland Hous. Renewal Project v. Deutsche Bank Trust Co.*, 621 F.3d 554, 559 (6th Cir. 2010), including as here where punitive damages account for a significant portion of the amount-in-controversy requirement, *LM Ins. Corp. v. Spaulding Enters. Inc.*, 533 F.3d 542, 551 (7th Cir. 2008). Under Ohio tort law, claimants may obtain punitive damages only when they have suffered actual harm and actual damages, *see, e.g.*, *Moskovitz v. Mt. Sinai Med. Ctr.*, 635 N.E.2d 331, 342 (Ohio 1994), and "[t]he actions or omissions of [the] defendant demonstrate malice or aggravated or egregious fraud," Ohio Rev. Code Ann. § 2315.21(C)(1). Charvat's pleadings leave it unclear whether he has "plausibl[y]" made sufficient allegations to

satisfy these requirements with respect to his common law, as opposed to his statutory, claims. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

We need not resolve the point, however, because the district court had federal-question jurisdiction over the claims under the Telephone Act and pendent jurisdiction over the rest of the claims. *See* 28 U.S.C. § 1331; *id.* § 1367. In *Dun-Rite Constr., Inc. v. Amazing Tickets, Inc.*, No. 04-3216, 2004 WL 3239533 (6th Cir. Dec. 16, 2004), we realize, this court took a different view, as had several other courts of appeals at the time, *see, e.g.*, *Foxhall Realty Law Offices, Inc. v. Telecomm. Premium Servs., Ltd.*, 156 F.3d 432 (2d Cir. 1998); *Int'l Sci. & Tech. Inst., Inc. v. Inacom Commc'ns, Inc.*, 106 F.3d 1146 (4th Cir. 1997). But *Dun-Rite* is an unpublished, unsigned order, and it (like the other courts of appeals decisions) predates the Supreme Court's decision in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005).

*Grable* resolved a dispute then percolating in the courts of appeals over whether federal-question jurisdiction exists when the underlying statute does not contain a private right of action. The Court clarified that the existence of a private right of action in a federal statute, while sufficient to establish federal-question jurisdiction, is not indispensable. Instead, *Grable* explained, the issue turns on whether the state-law claim (1) depends on (2) a substantial federal issue (3) that is in dispute and whether (4) exercising jurisdiction would not disturb the congressionally approved balance of federal and state court jurisdiction. *Id.* at 314.

The first three *Grable* factors favor jurisdiction. Charvat's claim depends on the interpretation of federal law, because it turns on a violation of a federal statute. The issue at hand, whether EchoStar violated several provisions of federal law, is substantial. *See Empire HealthChoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 700–01 (2006); *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 570 (6th Cir. 2007) (en banc). And the issue is disputed: Charvat says that EchoStar violated the Telephone Act, while EchoStar says it did not.

That leaves the fourth consideration, whether exercising jurisdiction comports with the roles of the state and federal courts in interpreting this statute. Strange as it may

seem, this federal statute explicitly provides for a private right of action only in *state court*.  Section 227(b)(3) says:

> "A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State–
>
> (A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
>
> (B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or
>
> (C) both such actions.
>
> If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

47 U.S.C. § 227(b)(3).  Section 227(c)(5) provides for a similar cause of action in state court.  The Act does not contain a provision expressly authorizing a private right of action in federal court.

These provisions may suggest that Congress anticipated that the Act would be privately enforced primarily in state court.  But they do not establish that such claims may proceed only in state court—that state court jurisdiction is exclusive.  Otherwise, the Act would preclude even federal-diversity jurisdiction, *see* 28 U.S.C. § 1332, and no court of appeals to our knowledge has reached that conclusion, and several have rejected it, *see, e.g.*, *US Fax Law Ctr, Inc. v. iHire, Inc.*, 476 F.3d 1112, 1117–18 (10th Cir. 2007); *Gottlieb v. Carnival Corp.*, 436 F.3d 335, 340–41 (2d Cir. 2006) (Sotomayor, J.); *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 450 (7th Cir. 2005).

When Congress enacted this legislation, the possibility of creating *exclusive* jurisdiction was not beyond the legislature's sight.  Elsewhere in the Telephone Act, § 227(f)(2) creates exclusive federal jurisdiction over Telephone Act claims brought by state attorneys general:  "The district courts of the United States . . . shall have *exclusive jurisdiction*" over such actions.  47 U.S.C. § 227(f)(2) (emphasis added).  Section

227(f)(2) "is explicit about exclusivity, while § 227(b)(3) is not; the natural inference is that the state forum mentioned in § 227(b)(3) is optional rather than mandatory." *Brill*, 427 F.3d at 451. Because different words imply differences in meaning, we do not think the word "may" in §§ 227(b)(3) and 227(c)(5) means that state courts have "exclusive" jurisdiction over Telephone Act claims. *See id.*

The removal statute points in the same direction. Section 1441(a) authorizes a defendant to remove to federal court any claim "arising under" federal law, "[e]xcept as otherwise *expressly* provided by Act of Congress." 28 U.S.C. § 1441(a), (b) (emphasis added). Statutory permission to litigate a federal claim in state court does not expressly remove a district court's federal-question (or for that matter diversity) jurisdiction. *See Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691, 696–97 (2003); *Brill*, 427 F.3d at 450.

*Tafflin v. Levitt*, 493 U.S. 455 (1990), illustrates the point. It construed a provision expressly giving litigants permission to bring RICO claims in federal court not to divest state courts of concurrent jurisdiction over private RICO actions. The statute's "grant of federal jurisdiction," the Court explained, "is plainly permissive, not mandatory, for the statute does not state nor even suggest that such jurisdiction shall be exclusive. It provides that suits of the kind described 'may' be brought in the federal district courts, not that they must be." 493 U.S. at 460–61 (internal quotation marks and citation omitted). Although *Tafflin* asked whether the provision divested state courts (courts of general jurisdiction) of jurisdiction, not whether the provision divested federal courts (courts of limited jurisdiction) of jurisdiction, that distinction makes no difference. The idea is not "that the [Telephone Act] authorizes federal jurisdiction by implication . . . [but] that the [Telephone Act] does not divest district courts of the federal question jurisdiction they already possess under 28 U.S.C. § 1331," *ErieNet, Inc. v. Velocity Net, Inc.*, 156 F.3d 513, 521 (3d Cir. 1998) (Alito, J., dissenting)—a shrinking of judicial authority, § 1441(a) reminds us, that Congress must do with clarity. An express divesting of federal-question jurisdiction over an action filed under a federal

law may not be done *sotto voce*. If Congress does not want these actions to proceed in federal court, all it needs to do is say so.

Nor does this interpretation make pointless Congress's express provision of a cause of action in state court. Even in the absence of this language, it may be true, claimants generally could have filed this action in state courts of general jurisdiction. But saying so serves the function of foreclosing litigation over whether federal jurisdiction over Telephone Act claims is exclusive. *See Yellow Freight Sys., Inc. v. Donnelly*, 494 U.S. 820 (1990); *Tafflin*, 493 U.S. 455; *Brill*, 427 F.3d at 451. Federal-question jurisdiction exists.

## III.

Charvat appeals the district court's dismissal of four counts of the complaint. The district court dismissed these counts, all predicated on the first telephone call allegedly made in violation of § 227(c)(5) of the Act, on the belief that the statute did not allow for damages based on a telemarketer's first improper call. At the time of its ruling, the court did not have the benefit of *GVN Michigan, Inc.*, 561 F.3d 623, which held that the Act allows a plaintiff to recover damages for the first telephone call that violates the Act, *id.* at 631. These claims thus should not have been dismissed, at least not on this ground.

## IV.

At the heart of this case (and of Charvat's appeal) is the question whether the Telephone Act and its accompanying regulations permit Charvat to recover damages from EchoStar, an entity that did not place any illegal calls to him but whose independent contractors did. The answer turns on the meaning of several provisions of the Telephone Act and its regulations. Start with the interrelation of §§ 227(b)(3) and (b)(1)(B) on the one hand, which allow a person to bring "an action" against an entity that "initiate[s]" a phone call using a pre-recorded device, and § 227(c)(5) on the other, which allows "[a] person who has received more than one . . . call . . . by or on behalf of the same entity" to sue for a "violation of the regulations prescribed under this

subsection." Even though § 227(b) does not contain "on behalf of" language, do both provisions apply equally to calls placed by agents of the entity sued? Does § 227(c)(5) create liability for entities on whose behalf calls are made even when the calls are placed by independent contractors rather than by agents or employees? And does § 227(c)(5) create liability for entities on whose behalf calls are made even though the section is labeled only as a private right of action and even though individuals still must sue for violations of regulations? The regulations contain a similar ambiguity. Just one of the relevant regulations explicitly creates liability for entities on whose behalf calls are made, 47 C.F.R. § 64.1200(d)(3), while the others concern entities who make or initiate calls, *see, e.g.*, *id.* §§ 64.1200(d)(1), (d)(6). Then there is the intricacy of 47 U.S.C. § 217, which appears to codify a form of vicarious liability applicable only to "common carrier[s] or user[s]." Congress left the term "user" undefined, leaving us to wonder which users the section applies to. Elsewhere in the same chapter, Congress seemed to allude to what kind of users it had in mind, *see, e.g.*, 47 U.S.C. § 222 (user of mobile service); *id.* § 225 (user of telecommunications); *id.* § 226 (user of premises); *id.* § 572 (cable users); *id.* § 605 (users of encrypted satellite cable). Although Congress purported to define "common carrier"—"any person engaged as a common carrier," 47 U.S.C. § 153(11)—this self-referential definition adds nothing, forcing the FCC to flesh out its meaning through case-by-case adjudication. *See, e.g.*, 77 FCC 2d 384 (1980).

The answers to these questions implicate the FCC's statutory authority to interpret the Act, to say nothing of its own regulations, all of which prompted us to invite the agency to file an amicus brief offering its views about the case. The agency filed a brief, suggesting answers to some but not most of these questions. "In order for the agency to offer an interpretation that goes beyond its limited prior statements on the subject," it explained, "a referral under the primary jurisdiction doctrine would be necessary." FCC Br. at 15.

The doctrine of primary jurisdiction allows courts to refer a matter to the relevant agency "whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an

administrative body[.]" *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 63–64 (1956). A review of the case law shows that courts have considered referring matters to agencies for a variety of reasons: (1) to advance regulatory uniformity, *see United States v. Radio Corp. of Am.*, 358 U.S. 334, 346, 350 (1959); (2) to answer a "question . . . within the agency's discretion," *FTC v. Verity Int'l, Ltd.*, 443 F.3d 48, 60 (2d Cir. 2006); and (3) to benefit from "technical or policy considerations within the agency's . . . expertise," *Ellis v. Tribune Television Co.*, 443 F.3d 71, 82–83 (2d Cir. 2006); *see Far E. Conference v. United States*, 342 U.S. 570, 574 (1952). "[T]he outstanding feature of the doctrine is . . . its flexibility permitting . . . courts to make a workable allocation of business between themselves and the agencies." *Civil Aeronautics Bd. v. Modern Air Transp., Inc.*, 179 F.2d 622, 625 (2d Cir. 1950); *see W. Pac. R.R. Co.*, 352 U.S. at 64. Each of these considerations favors a referral.

*Uniformity.* Telemarketers generally peddle their services nationally, creating the possibility of conflicting decisions in different state and federal jurisdictions. More than just that possibility exists here. In interpreting the Telephone Act and its regulations, courts have reached different conclusions about whether an entity on whose behalf a call is made can be liable under the Act, announcing different measures for determining whether an independent contractor or an agent acts on behalf of a company. *See Lary v. VSB Fin. Consulting, Inc.*, 910 So. 2d 1280 (Ala. Civ. App. 2005); *Hooters of Augusta, Inc. v. Nicholson*, 245 Ga. App. 363 (2000); *Worsham v. Nationwide Ins. Co.*, 772 A.2d 868 (Md. Ct. Spec. App. 2001); *Farmers Ins. Columbus, Inc.*, 897 N.E.2d 167. The volume of these lawsuits heightens the risk that individuals and companies will be subject to decisions pointing in opposition directions, which has already happened to Charvat, *see, e.g.*, *ATW, Inc.*, 712 N.E.2d 805; *GVN Mich., Inc.*, 561 F.3d 623; *Charvat v. EchoStar Satellite, LLC*, 676 F. Supp. 2d 668 (S.D. Ohio 2009), and is apt to happen to EchoStar, *see In re Long Distance Telecomm. Litig.*, 831 F.2d 627 (6th Cir. 1987); *EchoStar Satellite*, 676 F. Supp. 2d 668. Although a decision by the FCC would not guarantee nationwide uniformity, it would narrow the scope of judicial inquiry to whether the agency reasonably interpreted the statute. *See, e.g.*, *AT&T Corp. v. FCC*,

349 F.3d 692, 698–99 (D.C. Cir. 2003) (applying *Chevron* and arbitrary-and-capricious review after referral to agency).

*Discretion.*  Congress vested the FCC with considerable authority to implement the Telephone Act.  The Act gives the agency power to "prescribe regulations to implement" the legislation, 47 U.S.C. §§ 227(b)(2), 227(c)(1), 227(c)(2), to exempt calls from the requirements of the Act, *id.* §§ 227(b)(2)(B), 227(b)(2)(C), to intervene in suits filed by state attorneys general, *id.* § 227(f)(3), and to enforce the provisions of the Act and its accompanying regulations, *see, e.g.*, 22 FCC Rcd. 19396 (Nov. 9, 2007); 20 FCC Rcd. 18272 (Nov. 23, 2005).  In addition to these law-making and law-enforcing powers, the FCC has interpretive authority over the Telephone Act, *see Chevron, USA, Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843–44 (1984), and its accompanying regulations, *see Auer v. Robbins*, 519 U.S. 452, 461 (1997), including the power to construe the provisions at stake in this case:  §§ 217, 227(b)(1)(B), 227(b)(3) and 227(c)(5), and 47 C.F.R. §§ 64.1200(a)(2), (b)(1), (b)(2), (d)(1), (d)(2), (d)(3), (d)(4) and (d)(6).

*Expertise*.  The agency also has comparative expertise on the matter.  The agency, no surprise, is familiar with the regulations *it* prescribed, *see Auer*, 519 U.S. at 461, and possesses expertise over the statute *it* implements, *see Pension Benefit Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 651–52 (1990), whether that expertise comes in the form of technical experts, agency lawyers or agency staff in a position to obtain input from the relevant stakeholders.  Courts too have expertise when it comes to interpretive legal questions, but this is not just an interpretive dispute, as there are "fact[s] . . . in controversy," *Great N. Ry. Co. v. Merchs. Elevator Co.*, 259 U.S. 285, 294 (1922), including whether DISH Network made any of the calls and the degree of control EchoStar exercised over its retailers.  Even to the extent some of these questions implicate only interpretive disputes, that does not preclude a referral.  The questions "turn[] on the 199[1] Act and its implementing regulations," all of which come within "the bailiwick of the FCC[.]"  *In re StarNet, Inc.*, 355 F.3d 634, 639 (7th Cir. 2004).  "Only the FCC can disambiguate the word[s] [on behalf of]; all we could do would be

to make an educated guess.  And although the FCC's position would be subject to review by the judiciary for reasonableness, the agency's views are the logical place for the judiciary to start." *Id.*

*Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290 (1976), does not suggest a contrary approach.  The Supreme Court reversed a court of appeals' decision to refer a case to an agency when the plaintiff had sued only for violations of common law duties. The common law claims, the Court explained, did not depend on the meaning of a statute the agency administered, and the statute contained a "savings clause," demonstrating it did not displace common law remedies.  *Id.* at 298–99.  Today's case is the inverse of *Nader*, as Charvat has abandoned his common law claims and now pursues only claims that depend on the meaning of a federal statute that the FCC administers.

The FCC has agreed to issue a prompt ruling if the parties seek a decision from the agency. 47 C.F.R. § 1.2; FCC Br. at 19.  The claimant, Charvat, does not object to proceeding before the agency.  And we have not hesitated to invoke an agency's primary jurisdiction before, even when the idea was raised for the first time on appeal, *see Alltel Tenn., Inc. v. Tenn. Pub. Serv. Comm'n*, 913 F.2d 305, 309–10 (6th Cir. 1990). Although EchoStar resists this route, the benefits of securing a prompt ruling from the agency before rather than after our decision overcome that opposition.

V.

We refer this matter to the FCC.  Within 60 days of the agency's ruling, the parties may file briefs in this court advising the court about the agency's action and its significance to this appeal.